PER CURIAM.
This case arose out of an action instituted by the appellants, as plaintiffs in the trial court, whereby they sought an accounting, foreclosure of a lien, temporary injunction, and the appointment of a receiver among other things.
In his final judgment and decree, the chancellor made the following findings of fact, conclusions of law, and adjudications:
* # * * * *
“2) The Plaintiff, MORRY WINGOLD, is a resident of Canada. He is in complete ownership and control of the corporate Plaintiff, W & G HOLDINGS, LTD.
“3) The Defendant, BERNARD H. HOROWITZ, is a resident of Dade County, Florida. He is in complete ownership and control of the corporate Defendants, FIRST AMERICAN, LIMITED, SEABOARD HOLDINGS, LIMITED and MIAMI BEACH HOLDING COMPANY. He owns a substantial majority of the stock of FIRST AMERICAN INVESTMENT and MANAGEMENT COMPANY. Each of those corporations has personally appeared in this cause by and through Answer and Motions filed herein.
“4) This action was brought by the Plaintiffs to enforce a debt against securities located in Dade County, Florida. Other assets were brought into the receivershipi in this case and delivered to the receiver pursuant to Order of this court, and are presently in the receiver’s hands and are subject to this Judgment and Decree.
“5) This court has jurisdiction of all the parties to this cause and of the subject matter hereof.
“6) Toward the end of 1970, Defendant, HOROWITZ, acting through his corporations, was selling to the public lots located in the Bon Accord Tract on Long Island in the Bahamas. HOROWITZ had caused this tract to be subdivided into some 460 lots. By the end of 1970, eighty three lots had been sold to various purchasers on the installment basis. MR. HOROWITZ had put some $190,000 into the project, either directly or acting through his corporations.
“7) The HOROWITZ interests did not own the Bon Accord tract. HOROWITZ had an agreement to purchase it. The completion of the purchase and other minor expenses required additional financing of approximately $150,000.
“8) By the end of 1790, MR. HOROWITZ had determined not to put any more money into the Bon Accord project. He wished to secure outside money for its completion. He began negotiations with the Plaintiff, WINGOLD. On December 21, 1970, First American Limited, MR. HOROWITZ’S corporation, and IDEAL INVESTMENTS LIMITED, which owned the Bon Accord Tract, executed a written extension of time to close until February 1, 1971 for the sum of $5,000. According to MR. HOROWITZ, any further extensions of time to close on the Bon Accord tract could have been obtained by him at the rate of $5,000 per month. Having obtained the extension from the owners of the tract, MR. HOROWITZ continued to negotiate with WINGOLD.
“9) On February 1, 1971, MR. HOROWITZ and MR. WINGOLD agreed in writing that WINGOLD would advance $18,500 as a deposit on the balance due on the Bon Accord tract and MR. HOROWITZ agreed that he would repay the $18,500 to MR. WINGOLD if the purchase was not completed and if HOROWITZ did not wish to continue, WIN-GOLD could take over the transaction in its entirety. On that same day, an agreement was executed between counsel for Ideal Investment, the owners of the Bon Accord tract and counsel for NASSAU OAK-LANDS LIMITED, a Bahamian corporation, whereby NASSAU OAKLANDS LIMITED advanced the $18,500 and ob *593 tained a maximum of thirty (30) days to close the transaction. NASSAU OAK-LANDS LIMITED was a company which had been formed for MR. WINGOLD’s use and was owned or controlled by him. The company had not been active before.
“10) On February 16, 1971, the parties met in the Bahamas to consulate the transaction they had been negotiating. There were present at the meeting, MR. WIN-GOLD and Mr. Toothe, his counsel, MR. HOROWITZ and Mr. Trask, his counsel; and Barry Shapiro, MR. WINGOLD’s son-in-law.
“11) The transaction in substance was that NASSAU OAKLANDS LIMITED would purchase the Bond Accord tract. MR. WINGOLD would advance or cause to be advanced to NASSAU OAKLANDS, or for its benefit, the sum of $150,000, including the $18,500 paid on February 1. NASSAU OAKLANDS would execute a mortgage for the $150,000 to MR. WINGOLD or to a corporation owned or controlled by him (which is W & G HOLDINGS, LIMITED, Plaintiff here), the said mortgage to bear interest at 12% per annum and to amortize itself until paid at the rate of $5,000 per month. The first payment would become due March 16, 1971, or one month after date. WINGOLD would own 51% of NASSAU OAKLANDS and HOROWITZ 49% until the mortgage was paid at which time it would become 50-50. HOROWITZ would cause the accounts receivable he had created on the Bon Accord tract (resulting from the sale of the 83 lots aforementioned) to be assigned to NASSAU OAKLANDS LIMITED and he or his corporation would service the accounts receiving 10% of the receipts thereof. In addition, MR. HOROWITZ, through FIRST AMERICAN INVESTMENT and MANAGEMENT COMPANY, contracted to sell the balance of the Bon Accord property for NASSAU OAKLANDS; FIRST AMERICAN to receive 45% of the sales price as commission. That contract, Exhibit E in evidence, provided that SEABOARD HOLDING, INC., owned by MR. HOROWITZ, was designated (until further notice by NASSAU OAKLANDS) to handle the monies. Thus it was, that out of each dollar of sales created by HOROWITZ, his corporation would receive 45% in commission, (plus an additional 10% for servicing the accounts) and additionally, HOROWITZ would receive approximately 22^4% of the balance as a stockholder in NASSAU OAKLANDS.
“12) The negotiations on February 16 took all day. Papers were drafter and re-drafted at the instance of the parties and changes were made at the request of the HOROWITZ interest. As part of the negotiations, WINGOLD required securities for the payment of the mortgage. HOROWITZ gave securities as follows:
a) He executed a personal guarantee and assigned as security therefore a note from Cavanagh Leasing Corp., Exhibit G in evidence. HOROWITZ contends that the note was non-assignable; however, the Court finds that it had been previously assigned by MR. HOROWITZ to a national bank to secure a loan and that in any event, as between HOROWITZ and WIN-GOLD, HOROWITZ cannot advance the defense of non-assignability.
b) HOROWITZ caused MIAMI BEACH HOLDING CO., to guarantee re-payment by NASSAU OAKLANDS of the mortgage and he pledged all of the accounts receivable of MIAMI BEACH HOLDING CO. theretofore, or thereafter created with the land underlying.
“13) During the course of negotiations, HOROWITZ required that NASSAU OAKLANDS LIMITED pay $50,000 for the Bon Accord accounts receivable, the same to be evidenced by a promissory note to be payable to FIRST AMERICAN INVESTMENT and MANAGEMENT COMPANY. During the course of negotiations, the amount of the mortgage from NASSAU OAKLANDS LIMITED to W & G HOLDINGS LIMITED was increased from $150,000 to $200,000 and the interest rate was reduced from 12% to 9%. *594 “14) The $150,000 was advanced by MR. WINGOLD through his counsel, Mr. Patrick Toothe’s trust account. Mr. Toothe disbursed it as shown by his reconciliation in evidence for the purposes therein shown which the Court finds to be proper. The payment due March 16, 1971, from NASSAU OAKLANDS. LIMITED to W & G HOLDINGS, LIMITED on the mortgage was not made in full and the mortgage has been in default since that date.
“15) In passing on the credibility of the various parties testifying, the Court notes that MR. HOROWITZ filed with the Securities and Exchange Commission of the United States a prospectus for a public offering by MIAMI BEACH HOLDING CO. whose name he changed to Equitable Development Corp. That prospectus was accompanied by a certified financial statement for the company showing a stockholders’ equity of approximately $350,000. The accountant who certified the statement was unaware of the pledge by MIAMI BEACH HOLDING CO. to secure the indebtedness of NASSAU OAKLANDS LIMITED and he was also unaware of a previous pledge to secure an indebtedness of $125,000 and if he had known of these two matters, they would have shown as liabilities and reduced the stockholders’ equity to $325,000. MR. HOROWITZ also testified that MIAMI BEACH HOLDING CO. was organized as a corporation authorized to issue 50 shares of common stock and that those shares were pledged to Joseph Burnett and were in Mr. Burnett’s physical possession and that Burnett did not consent to MR. HOROWITZ’S changing the name of the corporation.
“MR. HOROWITZ testified in open court that he did not personally guarantee a default on the part of NASSAU OAK-LANDS LIMITED in the payment of its mortgage to W & G HOLDINGS LIMITED. Plaintiff’s Exhibit G in evidence specifically reflects that he did so guarantee payment.
“After pledging the note from Cavanagh Leasing Company as security for the payment of the NASSAU OAKLANDS mortgage, MR. HOROWITZ surrendered that note to Cavanagh in exchange for cash and for land and accounts receivable which he then re-pledged to the Merchants Bank of Miami for a loan of $100,000 without disclosing the prior assignment and without the consent of MR. WINGOLD or his corporation.
“MR. HOROWITZ was directed by the Court not to spend monies other than in the usual course of business and was orally cautioned by this Court against so spending monies and not withstanding both the direction and this Court’s warning, he spent $18,782.25 in violation of both the direction and the warning.
“16) The Bahamas law was pled and proven in this cause. The contracts in question were drawn and executed in Nassau. Both parties have taken the position that the Bahamas law governs this cause and the Court specifically so holds.
“17) The Bahamas law provides in pertinent part: (Ch. 112, Statute Law of the Bahamas, 1965 Ed.)
“‘3. — (1) If proceedings are taken in any court by any person for the recovery of any money lent after the commencement of this Act or for the enforcement of any agreement or security made or taken after the commencement of this Act in respect of money lent, and if there is evidence which satisfies the court that the interest charged is respect of the sum actually lent is excessive, or that the amounts charged for expenses, inquiries, fines, bonus, premiums, renewals or any other charges are excessive, and that, in either case, the transaction is harsh and unconscionable, or is otherwise such that a court of equity would give relief, the court may—
(d) set aside, either wholly or in part, or revise or alter, any security given or *595 agreement made in respect of money lent;
(e) if the lender has parted with the security, order him to indemnify the borrower or other person sued.’
“The Court’s powers with respect to the transactiqn under Nassau law are, as set out in the statute, very broad. The Court determines that the application of those powers in this case is proper and therefore it is hereby ordered that:
“a) That certain mortgage from NASSAU OAKLANDS LIMITED to W & G HOLDINGS LIMITED in the principal sum of $200,000 dated February 16, 1971, and that certain promissory note from NASSAU OAKLANDS LIMITED to FIRST AMERICAN INVESTMENT and MANAGEMENT COMPANY both be and they are cancelled, and all other collateral.
“b) MORRY WINGOLD, or his nominees shall own 52% of the capital stock of NASSAU OAKLANDS LIMITED; BERNARD HOROWITZ, or his nominees shall own 48% of the. capital stock of NASSAU OAKLANDS LIMITED.
“c) The receiver shall continue in possession of, or claim to possession of, all the capital stock of NASSAU OAKLANDS LIMITED and of all the proceeds of the Cavanagh Leasing note, as pertains to the stock only. He shall enter into a contract for the sale of the NASSAU OAK-LANDS LIMITED real property and the collection of its receivables in lawful manner with such persons or corporations as he deems proper, said contracts to be at total commissions not exceeding 28% of sales.
“d) The costs of the receivership, and the manner of payment thereof will be taxed by the Court on subsequent Motion and Order. The Court finds the receivership to be justified and proper, and further finds the temporary injunction and the temporary receivership to be fully justified to prevent the dissipation of assets pledged as security in this matter.
"e) The net proceeds of sales will be divided equally between MR. WINGOLD, or his nominees, and MR. HOROWITZ, or his nominees until there has been paid to BERNARD H. HOROWITZ the amount of $190,000 and until there has been paid to MORRY WINGOLD the sum of $150,000. The receivership will then be dissolved by further Order of this Court.”
sjc iji i[i
Subsequent to the entry of this final judgment and decree, the appellants preserved one point for review on this appeal, to wit: that the trial court erred in allegedly rewriting the contract between the parties. The appellees have cross-assigned error and preserved a number of points for review, the principal ones being that the trial judge failed to find usury in the transaction and, further, that he erred in dividing the ownership in Nassau Oaklands Limited 52/48 between the respective parties.
 We have the benefit of the well-reasoned opinion by the trial judge, as well as briefs and oral argument by counsel for the respective parties, and are of the opinion that the trial judge [pursuant to the law of the place where the contract was made] was well within his authority and discretion in cancelling the mortgage from Nassau Oaklands Limited to W & G Holdings Limited and the indebtedness evidenced by the note from Nassau Oaklands Limited to First American Investment and Management Company, and providing for the continuance of the receivership until certain of the indebtednesses were discharged. Home Insurance Company v. Dick, 281 U.S. 408, 50 S.Ct. 338, 74 L.Ed. 933; 16 Am.Jur.2d Constitutional Law, § 377; Anno. 92 ALR 932. However, we find no basis in the record and counsel, in their briefs or during oral argument, have been unable to give us any valid reason why the capital stock in the corporation was divided on a 52/48 basis. We there *596 fore modify the final judgment and decree here under review, and in particular Paragraph 17(b), by providing that the stock ownership shall be: Morry Wingold or his nominee 50%, and Bernard H. Horowitz or his nominee 50% in and to the capital stock of Nassau Oaklands Limited.
Therefore, except as modified herein, the final judgment and decree here under review be and the same is hereby affirmed.
Affirmed.