PER CURIAM:
 

 Affirmed on the basis of the Memorandum Decision and Order and Final Judgment of the Bankruptcy Judge, as previously affirmed by the district court, a copy of which is appended hereto as an appendix.
 

 AFFIRMED.
 

 APPENDIX
 

 MEMORANDUM DECISION AND ORDER AND FINAL JUDGMENT
 

 PAUL G. HYMAN, Bankruptcy Judge.
 

 Plaintiff, LEONARD W. FREARSON, Trustee in Bankruptcy brought this action objecting to Proof of Claim on Secured Debt No. 1424 filed in these proceedings by MORRY WINGOLD and W & G HOLDINGS LIMITED, Defendants. Through their attorney, Defendants filed their answer and trial was held April 29, 1977. Thereafter, both parties submitted memo-randa of law which have been considered by this Court. The Court, after thoroughly considering the record, evidence and memo-randa, and being further advised in the premises, concludes that Defendants do not hold a security interest in property of this estate, and accordingly enters this Memorandum Decision and Order and Final Judgment.
 

 FACTS
 

 Defendants, MORRY WINGOLD and W & G HOLDINGS LIMITED, have filed a Proof of Claim on Secured Debt No. 1424 in these proceedings based upon the Court rulings in the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida, Case No. 71-11608,
 
 MORRY WINGOLD, et al. v. BERNARD H. HOROWITZ, et al.
 

 In that action, Defendants sued to recover a mortgage debt of Nassau Oaklands Limited, a Bahamian corporation. Miami Beach Holding Company, predecessor of EDC, was named as a Defendant because its President, BERNARD H. HOROWITZ, had guaranteed the debt, and secured the guarantee by an assignment of contracts and accounts receivable. A “Final Judgment and Decree” was entered in their favor on November 2, 1971.
 

 Wingold v. Horowitz
 
 was twice appealed by the Defendants herein; first, to the District Court of Appeal, Third District, 274 So.2d 591 (Fla.App. 3d Dist. 1973) which affirmed the trial court, and secondly, on certiorari to the Supreme Court of Florida, 292 So.2d 585 (Fla. 1974). The Supreme Court found that the trial court had incorrectly applied the Bahamian remedial law in its decree, and reversed and remanded the case for further proceedings consistent with its decision. Subsequently, an Order and Mandate was issued by the Third District, 294 So.2d 716 (Fla.App. 3d Dist. 1974), and an amended final decree was issued by the Circuit Court on November 15, 1974.
 
 *1154
 
 However, a Motion for Rehearing filed November 25, 1974 directed to that amended final decree was still pending at the time EDC filed Chapter XI proceedings in this Court on June 3, 1975. Additionally, a Motion for an Order on the mandate directed to the amended final decree was filed with the Supreme Court of Florida, and on November 25, 1974, a Motion to Treat Plaintiff’s Motion for Order on Mandate as Plaintiff’s Motion for Rehearing was filed in the Circuit Court. Both of these motions were also pending on June 3, 1975, and the case has remained dormant since that time.
 

 Defendants’ Proof of Claim asserts a security interest in property of the Bankrupt consisting of all accounts receivable of the Bankrupt, together with all contracts, computer print-outs and related material respecting those accounts, and together with all monies paid for and on behalf of those accounts, excepting for a mortgage in favor of Joseph Burnett. At trial, Defendants agreed that their claim lies against Paradise Lakes Subdivision, an asset of the Bankrupt estate, located in Putnam County, Florida, but does not extend to any other property which was titled in EQUITABLE DEVELOPMENT CORPORATION (EDC) as of June 3, 1975.
 

 Defendants’ security interest is evidenced by a document entitled “Loan Transaction and Assignment of Contracts and Accounts Receivable”, dated February 16, 1971.
 

 The parties intended that the Assignment “shall be governed by the Uniform Commercial Code of the State of Florida.” The actual assignment clause provided as follows:
 

 “4. Assignor hereby assigns, sets over, transfers and conveys unto the Assignee all of the Assignor’s interest in the property described on Exhibit ‘A’ as well as all of the contracts entered into with purchasers of home sites on such property heretofore or hereafter entered into, and all monies to be paid by the contract purchasers under such contracts, subject to the charge in favor of Joseph Burnett but otherwise free from encumbrances.”
 

 The “Term and Definitions” portion of the Assignment includes the following:
 

 “The Real Property: the property constituting 1500 home sites which is owned by the Assignor as more particularly described on Exhibit ‘A’ hereto attached and made a part hereof.
 

 “Contracts and Accounts Receivable: All contracts heretofore and after made by Assignor for the sale of the property with home site buyers and the accounts receivable representing the remaining uncollected portion of the purchase price payable by such home site buyers under said contracts subject only to a prior change of the same dated the 13th day of January, 1971, in favor of Joseph Burnett.”
 

 There is no legal description of the property in the body of the Assignment. Apparently, a description was attached as Exhibit “A” but this Exhibit is not in evidence. However, as indicated above, the parties have agreed that the real property subject to the assignment was located in the Paradise Lakes Subdivision.
 

 Defendants have not filed a financing statement covering their security interest in the accounts receivable and contracts representing those accounts receivables with the Secretary of State for the State of Florida pursuant to the provisions of Florida’s Uniform Commercial Code, nor have Defendants recorded any documents reflecting their interest in the land underlying the accounts receivables and contracts in the Public Records of Putnam County, other than the Order described below.
 

 Defendants assert that an Order of the Circuit Court in
 
 Wingold v. Horowitz,
 
 dated May 5, 1974, gives notice of their interest. Defendants recorded this Order in the Public Records of Putnam County on June 5, 1974. The Order states:
 

 “[T]he Defendants [in
 
 Wingold
 
 v.
 
 Horow
 
 itz] shall make no disposition of the assets listed on Schedule A to this Order, except in the ordinary course of business, and shall keep all proceeds from those assets, except those disbursed in the ordinary course of business, firm in their hands until further Order of Court.”
 

 
 *1155
 
 In turn, relevant portions of Schedule A attached to the Order referred to Exhibit “H” to the Original Complaint in
 
 Wingold v.
 
 Horwitz:
 

 “(2) All accounts receivable of Miami Beach Holding Co. by whatever name now known, together with the contracts representing those accounts receivable and all monies paid on account of those accounts receivable assigned by Exhibit H to the Complaint in this cause.
 

 (3) All of the interest in Miami Beach Holding Co. by whatever name now known in and to the real property assigned by Exhibit H to the Complaint in this cause . . . ”
 

 The property of Miami Beach Holding Company affected by this Order was only that property included in the Assignment, which was attached to the Original Complaint as Exhibit “H” in
 
 Wingold v. Horowitz.
 
 Because the Court has determined that Defendants do not hold a security interest against the Bankrupt estate, it has not considered or determined with any precision what property within Paradise Lakes is subject to the terms of the Assignment. However, it is worth noting, and the Court takes judicial notice of the fact
 
 [1]
 
 that Paradise Lakes is heavily encumbered by mortgages and assignments of accounts receivable which might take priority over Defendants’ interest if this Court had found Defendants’ interest to be enforceable against the Trustee. Also, the Court notes that Defendants have not shown what property is subject to the terms of the Assignment, other than the description contained in the Definitions referred to above.
 

 ISSUES
 

 It is the Trustee’s position that the Assignment of Contracts and Accounts Receivable which Defendants obtained created a security interest in contracts for the sale of land subject to the filing requirements of Florida’s Uniform Commercial Code, Fla. Stat. § 679.101 et seq., and that since they failed to perfect this security interest before EDC filed its Chapter XI petition, it is not enforceable against the Trustee in Bankruptcy, under his powers as set out in § 70c of the Bankruptcy Act. In response, Defendants assert that they obtained “an interest in or lien on real estate” excluded from the U.C.C. by Fla.Stat. § 679.104(10), and that effective notice of this interest in land was given as of the date the May 5, 1974 injunctive Order was recorded in the Public Records of Putnam County, Florida. Plaintiff further takes the position that, should the Court hold that Defendants’ security interest is an interest in land, or includes an interest in land, that the Order does not make Defendants’ interest enforceable against the Trustee in Bankruptcy, since the interest itself was not recorded pursuant to Fla.Stat. § 695.01(1). Plaintiff further contends that there has been no final judgment in the state court proceedings which could operate as a valid lien against property of the Bankrupt estate.
 

 I. The security interest in accounts receivable and contracts which Defendants obtained is subject to the filing requirements of Fla.Stat. § 679.01
 
 et seq.,
 
 as a secured transaction. Defendants also received the Assignor’s interest in the real property subject to the contracts, which will be dealt with below in Section II.
 

 There can be no doubt that the parties to the Assignment intended to create a security interest governed by the U.C.C.
 
 [2]
 
 The opening sentence states:
 

 “This is an assignment of certain property to secure the payment of a debt and shall be governed by the Uniform Commercial Code of the State of Florida.”
 

 The Assignment was intended by the parties to create a security interest in contracts, contract rights, and contract proceeds, which are personal property.
 

 
 *1156
 
 The nature of this transaction is not affected by the fact that real property was also assigned as collateral, or by the fact that the contracts and receivables assigned involved the purchase of land.
 
 [3]
 
 Unless specifically excluded by Fla.Stat. § 679.104, Ch. 679 applies
 

 “to any transaction (regardless of its form) which is intended to create a security interest in personal property . . ” Fla.Stat. § 679.102(l)(a).
 

 ******
 

 “. . . and to security interest created by contract.”. Fla.Stat. § 679.102(2).
 

 Additionally,
 

 “. . [t]he application of this Article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply.” Fla.Stat. § 679.102(3).
 

 Thus, Defendants obtained security which must be considered personalty when the relevant provisions of the U.C.C. are consulted, since the collateral consists of contracts and contract rights and the security interest therein was created by contract. The security interest is created by contract (the Assignment), emanates from the rights and obligations of the executory contract between vendor and vendee, and must be characterized as personal property, even though a security interest in land was also assigned.
 

 However, Defendants argue that the accounts receivable and contracts constitute a lien on real estate, and thus are excluded from the application of the secured transaction provisions of the U.C.C. by Fla.Stat. § 679.104:
 

 “This [Article] does not apply . (10) ... to the creation or transfer of an interest in or lien on real estate
 

 The Official Comment on this section states this exclusion:
 

 “. . . [m]erely reiterates the limitations on coverage already made explicit in Section 9-102(3)”, quoted
 
 supra.
 

 In asserting that they hold an interest in land, Defendants rely on the relationship between the parties to the contract to which they hold the assignment, the vendor who has sold an agreement for deed, and the vendee who has purchased it. Asserting that the vendor’s interest in an agreement for deed is that of a purchase money mortgagee, Defendants contend that they were assigned all the interest of the vendor-mortgagee, and were transferred liens on real estate.
 

 For the characterization of the vendor’s interest as that of a mortgagee, Defendants rely upon the case of
 
 Hoffman
 
 v.
 
 Semet,
 
 316 So.2d 649 (4 DCA Fla. 1975). The Fourth District held that a vendee in possession under a recorded agreement for deed, after default and before relinquishing possession to the vendor, has an equity of redemption in the property which makes his interest subject to levy and execution upon a judgment at law. The Court recognized that a vendee who has recorded his agreement for deed has an interest in land similar to that of a mortgagor. However, the
 
 Hoffman
 
 case, although relevant in determining the relative interests of vendor and vendee, has no bearing upon the assignment
 
 *1157
 
 of the vendor’s interest to a third party. It is obvious that the vendor has an interest in land; he holds legal title to the property. The vendee has an equitable interest in the land which arises when the contract is entered into between the parties and the vendee’s payments begin. Although the transfer of legal title is the ultimate result of a contract for the sale of land, the relationship between the parties is that of a bilateral executory contract, with continuing rights and obligations on each side. See 33 Fla.Jur.,
 
 Vendor and Purchaser,
 
 § 1,
 
 et seq.
 

 Defendants rely upon the “lien interest” of a vendor for their position that the Assignment conveyed an interest in land. The Court agrees that the vendor has an interest in land, whether as title holder or lienor. However, the vendor also had contract rights in the agreements for deed, consisting of rights to payments by the vendees pursuant to the terms of the agreements for deed. These rights of payment were the accounts receivable transferred by the assignment, and are clearly personal property subject to the Uniform Commercial Code.
 

 If Defendants’ security interest covers an interest in personalty, they are required to file a financing statement pursuant to Fla. Stat. § 679.302 in order to perfect that interest.
 
 [4]
 
 Because Defendants failed to perfect this security interest as required by filing a U.C.C.-l Form with the Secretary of State of Florida, their interest is subordinated to the Trustee in his position as a lien creditor under Fla.Stat. § 679.301(l)(b) and § 70c of the Bankruptcy Act.
 

 II. The Assignor’s interest in the real property defined in the assignment was also conveyed to Defendants. However, Fla.Stat. § 695.01(1)
 
 Conveyances to be Recorded,
 
 states:
 

 “No conveyances, transfer, or mortgage of real property or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration without notice, unless the same be recorded according to law.”
 

 Under the above statute, in order for a mortgage or transfer of real property of any interest in real property in Florida to be good and effectual against creditors without notice of the mortgage or interest, the same must be recorded in the Public Records of the county where the land is located. The Trustee in Bankruptcy, under § 70c of the Bankruptcy Act, has the rights and powers against all property of EDC which a judgment lien creditor with execution returned unsatisfied would have as of June 3,1975, the date EDC filed its Chapter XI petition and comes within the definition of “creditors” in Fla.Stat. § 695.01(1). Defendants have not recorded the Assignment in the Public Records of Putnam County, Florida, and therefore cannot assert a security interest thereby in any land titled in EDC.
 

 However, Defendants assert the Trustee was put on record notice of their interest in the real property and accounts receivable and contracts by the May 5, 1974 Order of the Circuit Court in
 
 Wingold v. Horowitz.
 
 Notice of an interest does not establish its validity and the Order did not determine that Wingold and W & G Holdings had a valid security interest against Miami Beach Holding Company. It was entered pending a continued hearing and directed the Defendants to preserve assets until further order of court. By its terms, the Order binds only the Defendants to the lawsuit, and cannot be deemed record notice of a valid security interest. No description of the property involved or purportedly affected by the Order was set forth to operate as record notice to third parties of a claim against or interest in property of Miami Beach Holding Company. The Order did not even operate as a lis pendens, since under Fla.Stat. § 48.23, no court action can operate as a lis pendens.
 

 
 *1158
 
 . until a notice of the commencement of the action is recorded . containing a
 
 description of the property involved or to be affected
 
 and a statement of the relief sought as to the property. (Emphasis added:) •
 

 Defendants rely upon
 
 Griffin v. Gulf Life Insurance Co.,
 
 146 So.2d 901 (1 DCA Fla. 1962) for their position that the Order constitutes record notice to third parties. The Court held that a bank which had cashed a check for a depositor and charged it against her savings account was not entitled to a set off because an injunction had been previously issued enjoining the depositor from disposing of proceeds of a life insurance policy, some of which were deposited in her savings account. The bank was advised of the terms of the injunction and agreed to have the account “tagged” so that no withdrawals would be honored without a court order. The case is clearly distinguishable on the facts and the law since the bank had actual notice of the injunction and had further agreed to not honor withdrawals without a court order.
 

 The order in the
 
 Wingold
 
 case allowed the affected Defendants to continue in the ordinary course of business. Third parties would only be put on notice that the Defendants were directed to preserve proceeds from assets pending further order of Court. No determination was made as to any person’s rights to these assets, and no further final Order was recorded in the Public Records of Putnam County.
 

 Such an Order could not affect the Trustee in Bankruptcy, who was vested with all the title of the Bankrupt’s property in his possession on the date the petition was filed. If it gave notice of a claim, the claimant would still have to come forward to assert and prove a security interest in the bankrupt estate viable against the Trustee. Defendants have so claimed a security interest, but it is not enforceable against the Trustee. Their interest in accounts receivable and contracts has not been perfected under Florida law, nor has their interest in land been put of record in the county where the land is located. Defendants have not provided the Court with a description of what is encompassed by their, security interest. Finally, there has been no final judgment which could constitute a lien against the estate. Defendants do not hold a security interest against the estate.
 

 [1]
 

 . See Amended Report on Liens on the Equitable Development Property filed by the Trustee herein, pp. 3-4.
 

 [2]
 

 . The principal test of whether a transaction comes under Article Nine is whether the transaction is intended by the parties to create a security interest. Official Comment to Fla. Stat. § 679.102(1).
 

 [3]
 

 . See the Official Comment to Fla.Stat. § 679.-102; relying on Fla.Stat. § 679.102(3), Official Comment 4 to Fla.Stat. § 679.102(3) and Fla. Stat. § 679.104(10); Coogan, Hogan and Vagts in 1A
 
 Secured Transactions Under the Uniform Commercial Code,
 
 § 16.04(1) at 1698 (1973) state:
 

 “Thus the enactment of the Code will have no effect on mortgages which cover land and land alone, whether they were executed prior to the Code or thereafter. But if a note secured by a mortgage is used as Collateral in the note and the mortgage whether or not some recording under real estate law is required for the assignment of the mortgagee’s interest in the mortgage.”
 

 Additionally, White and Summers in their text,
 
 Uniform Commercial Code,
 
 § 22-6, at 773 conclude:
 

 “It appears that Article Nine applies to security interests in ‘realty paper’. B mortgages his real estate to L. L pledges B’s note and the real estate mortgage to Bank as security for a loan. Article Nine does not apply to the transaction between B and L, but does apply to the transaction between L and the Bank. This seems to be the plain meaning of 9-102(3).”
 

 [4]
 

 . Fla.Stat. § 679.302 refers to all situations when filing is required to perfect security interests and mentions the limited situations when the filing provisions do not apply to certain security interests.