**In the Matter of: D.J. MALTESE, INC., Debtor.**

**Paul BOROCK, Trustee, Plaintiff,**

v.

**NBD DEARBORN BANK, N.A., a national banking association, Defendant.**

Bankruptcy No.
Adv. No. 84–0395–B.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Sept. 20, 1984.

Dougherty & Schneider by Kenneth M. Schneider, Detroit, Mich., for plaintiff.

National Bank of Detroit Law Department by David J. Vigna, Detroit, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether a contract for the sale of realty is personal property within the meaning of Article 9 of the Uniform Commercial Code.

The parties have stipulated to the following facts:

1. The D.J. Maltese Company, Inc. (debtor) is engaged in the business of building and remodeling commercial and residential properties. Prior to bankruptcy, the debtor financed these operations through NBD Dearborn Bank, N.A. (NBD). To secure this ongoing financial relationship with the bank, the debtor granted a security interest in all of its present and future accounts, contract rights, general intangibles, chattel paper and their proceeds. This relationship is hereinafter referred to as the Article 9 loan.

2. In addition to its regular building and remodeling business, the debtor was also engaged in the construction of eight custom condominium units throughout the period of November, 1980 through September 9, 1983. The debtor utilized construction loans from NBD Mortgage Company for this project. The debtor made principal and interest reduction payments on both the Article 9 and construction loans as each condominium was sold.

3. A contract for the sale of the last condominium was entered into on August 29, 1983. On September 9, 1983, the balance on the commercial loans owing to NBD on four notes was $67,471.43, and the balance owing to NBD Mortgage Company was $25,458.75. On September 9, 1983, the debtor sold the condominium pursuant to the contract of sale for $152,489.23. This sum was deposited into the debtor's business account at NBD. The proceeds were used to retire the $25,548.75 mortgage debt to NBD Mortgage Company and three of four notes totalling $17,471.43 held by NBD. The debtor was permitted to use the remainder of the funds to continue its business operation. After retirement of the mortgage and the notes, the debtor still owed one secured note held by NBD in the amount of $50,000.00.

4. On September 13, 1983 and September 14, 1983, the debtor transferred $106,347.59 out of its account as follows: $36,347.59 to Barbara Maltese; $20,000.00 to Dominic Maltese; $20,000.00 to Dominic Maltese, Jr.; $10,000.00 to Anthony Ficaro; and $20,000.00 to open a new account in the debtor's name at Dearborn Bank & Trust. These transfers were not authorized by NBD.

5. On September 20, 1983, the debtor filed a chapter 11 petition. NBD then filed a complaint to recover the transfers, set forth in paragraph four, as proceeds of collateral in which it had a security interest. Contemporaneously therewith, the trustee filed a separate complaint for the recovery of these transfers. The two cases were then consolidated and a judgment was entered on April 4, 1984 against the transferees. All of the transferred proceeds were returned to the trustee pending a determination whether the trustee or the bank had a right to these proceeds.

NBD claims that the $50,000 unpaid note is secured by the fund held by the trustee by virtue of its Article 9 security interest. The trustee concedes that Article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts." Mich. Comp. Laws § 440.9102 (1979). The trustee, however, contends that the contract for the sale of the condominium was a transfer of an interest in real estate and therefore excluded from the application of Article 9 by virtue of section 440.9104 of

the Michigan Compiled Laws.[1] Accordingly, NBD's Article 9 security interest did not attach to the contract of sale or the proceeds of sale, and thus NBD is not entitled to satisfy its $50,000 indebtedness from the fund held by the trustee. Additionally, the trustee contends that even if NBD's security interest "attached" to the contract of sale, the "attachment" constituted a preferential transfer as defined in section 547(b) of the Bankruptcy Code. Finally, the trustee maintains that since the bankruptcy petition was filed more than ten days after the proceeds were received by the debtor, NBD is precluded from reaching the fund held by the trustee by virtue of section 440.9306(4) of the Michigan Uniform Commercial Code. The parties agree that the question whether NBD's Article 9 security interest attached to the contract of sale should be decided first since, if the trustee prevails on this issue, the remaining issues will be moot.

It is this question, therefore, that the court will first address. The first issue with respect to this question is whether the contract right to receive payment for the sale of the real estate is personal property. M.C.L. § 440.9102(3) states that, "[A] security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply." The Official U.C.C. Comment to section .9102(3) contains the following illustration:

> The owner of Blackacre borrows $10,-000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, *when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest in an instrument even though the instrument is secured by a real estate mortgage ...*

Official U.C.C. Comment 4, *reprinted in* M.C.L.A. § 440.9102 (West Supp.1984) (emphasis added). In commenting on the effect of U.C.C. § 9–102, J. White & R. Summers in their text *Uniform Commercial Code*, § 22–6 at 890 (West 2d ed. 1980), state:

> It appears that Article Nine applies to security interests in what might be called "realty paper." B mortgages his real estate of L. L pledges B's note and the real estate mortgage to Bank as security for a loan. Article Nine does not apply to the transaction between B and L, but does apply to the transaction between L and Bank. This seems to be the plain meaning of 9–102(3).

Case law supports this conclusion. In *Frearson v. Wingold (In re Equitable Development Corp.,* 617 F.2d 1152 (5th Cir. 1980), the Court of Appeals for the Fifth Circuit, in holding that a right to receive payment under contracts for the sale of real estate was personal property, stated:

> The security interest is created by contract (the Assignment), emanates from the rights and obligations of the executory contract between vendor and vendee, and must be characterized as personal property, even though a security interest in land was also assigned.

*Id.* at 1156. The court rejected the defendant's contention that the assigned contract rights constituted a lien on real estate and therefore was not personal property.

> Defendants rely upon the "lien interest" of a vendor for their position that the Assignment conveyed an interest in land. The Court agrees that the vendor has an interest in land, whether as title holder or lienor. However, the vendor also had contract rights in the agreements for deed consisting of rights to payments by the vendees pursuant to the terms of the agreements for deed. These rights of payment were the accounts receivable transferred by the assignment, and are clearly personal prop-

---

1. Section 440.9104(j) provides that an Article 9 security interest does not apply "to the creation or transfer of an interest in or lien on real estate."

erty subject to the Uniform Commercial Code.

Id. at 1157. *See also, Johnstone v. Mills (In re Columbia Pacific Mortgage, Inc.),* 22 B.R. 753 (Bankr. W.D. Wash. 1982); *Hughes v. Russo (In re Equitable Development Corp.),* 20 U.C.C. Rep. Serv. 1349, 1353 (Bankr. S.D. Fla.1976).

Since the debtor's right to receive payment pursuant to the contract of sale was personal property, it is necessary to determine whether NBD's Article 9 security interest embraced this contract right. The security agreement between NBD and the debtor provided that the:

> Secured Party (herein called "Bank"), and for the purposes of securing the payment of all present and future indebtedness of the Assignor to the Bank, the Assignor does hereby sell, assign, transfer and set over to the Bank, its successors and assigns, all moneys and claims for money due or to become due to the Assignor under all the Assignor's present and future Accounts Receivable, which term shall include, but without limitation, *present and future Accounts, Contract Rights, Chattel Paper, and General Intangibles, as these terms are defined in the Uniform Commercial Code.*

Exhibit A, Security Agreement and General Assignment of Accounts Receivable. (Emphasis added.)

The Uniform Commercial Code prior to 1972 distinguished "account," "contract right" and "general intangibles" as follows:

> "Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper. "Contract right" means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper. "General intangibles" means any personal property (including things in action) other than goods, ac-

counts, contract rights, chattel paper, documents and instruments.

U.C.C. § 9–106; M.C.L.A. § 440.9106 (West 1967). In 1972, U.C.C. § 9–106 was amended. (Amendment adopted in Mich. by P.A. 1978, No. 369 § 1, Eff. Jan. 1, 1979). The term "contract right" was eliminated as unnecessary. *See* Official U.C.C. Reasons for 1972 Change, *reprinted for* M.C.L.A. § 440.9106 (West Supp.1984). Section 440.-9106, in pertinent part, now reads as follows:

> "Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance. "General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.

The 1972 amendments to U.C.C. § 9–106 were "functional, definitional, ... [and merely] declarative of the meaning of the code as it existed before ...." *Dynair Electronics, Inc. v. Video Cable, Inc.,* 55 Cal.App. 3d 11, 127 Cal. Rptr. 268, 273 (1976). The contract for the sale of realty was not an account since it is not a right to payment for goods sold or leased or for services rendered.[2] However, a contract for the sale of the condominium is a "general intangible." No other conclusion is possible. The term "general intangibles" is defined in section 440.9106 as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." The Official Comment specifically states that the term general intangibles includes "miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security."

For the foregoing reasons, NBD's security interest attached to the contract for the sale of the condominium and the proceeds

---

**2.** M.C.L. § 440.9105(h) defines goods as "all things which are moveable at the time the security attaches or which are fixtures, (section 9313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles."

realized from the sale, unless NBD's security interest is avoidable or limitable by virtue of the arguments advanced by the trustee which have not been addressed in this opinion.

A status conference will be scheduled to determine the most expeditious manner of resolving the issues that remain before the court.

An appropriate order is to be submitted for entry.