In re THE IT GROUP, INC.,
CO., et al., Debtors.

Fleet National Bank,
Plaintiff/Appellant,

v.

Whippany Venture I, LLC, a Delaware
limited liability company,
Defendant/Appellee.

Bankruptcy No. 02–10118–MFW.
CIV.A.03–932–JJF.

United States District Court,
D. Delaware.

March 16, 2004.

Thomas D. Walsh, Esquire of McCarter & English, LLP, Wilmington, DE. Of counsel: Joseph Lubertazzi, Jr., Esquire and Alison G. Greenberg, Esquire of McCarter & English, LLP, Newark, New Jersey, for Appellant, Fleet National Bank.

Gregg M. Galardi, Esquire, Robert S. Saunders, Esquire, Rosemary S. Goodier, Esquire and Marion M. Quirk, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, DE, for Whippany Venture I, LLC.

## MEMORANDUM OPINION

FARNAN, District Judge.

Before the Court is an appeal by Fleet National Bank ("Fleet") from the August 21, 2003 Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") denying partial summary judgment in favor of Fleet and granting partial summary judgment in favor of Whippany Venture I, LLC ("Whippany"). For the reasons discussed, the Court will affirm the Bankruptcy Court's Order dated August 21, 2003.

### I. The Parties' Contentions

The instant appeal arises in connection with the sale by Whippany of 35.17 acres of real property located in Hanover Township, Whippany, New Jersey to Sterling Properties Group, L.L.C. ("Sterling"). As part of this transaction, Whippany obtained a loan from Fleet in February 2000 (the "Loan") evidenced by a Line of Credit Note dated February 23, 2000, in the principal amount not to exceed $2,500,000. Simultaneously with the Loan, Whippany executed an Assignment Agreement pursuant to which Whippany assigned to Fleet its rights under the Sterling Sale Contract. Pursuant to the Assignment Agreement, which was recorded in New

Jersey, Whippany is required to turnover any sale proceeds to Fleet as repayment for the principal and interest on the loan.

At the time of the transaction, counsel for Whippany issued an opinion letter directed to Summit Bank, the predecessor in interest to Fleet, noting that perfection of the security interest required filing of the requisite statements with the Office of the Department of the Treasury of New Jersey. Fleet filed the paperwork consistent with the opinion letter rendered by Whippany's counsel.

Thereafter, Whippany and its affiliates filed for bankruptcy. Fleet filed a Reservation of Rights with respect to its rights regarding the Whippany Property. In April 2002, an auction of substantially all of Whippany's assets was conducted and approved by the Bankruptcy Court. As part of the Sale Order, Whippany was required to escrow funds to satisfy the Fleet claim. Thereafter, Whippany assumed the Sterling Sale Contract and assigned its rights thereunder to The Shaw Group, Inc. ("Shaw"), the successful bidder at the auction.

Fleet commenced the instant adversary proceeding by filing a Complaint for Determination and Payment of Secured Claim. Fleet also filed a proof of claim and sought partial summary judgment, which the Bankruptcy Court denied by its August 21, 2003 Order.

By its appeal, Fleet contends that the Bankruptcy Court erred in failing to conclude that Fleet had a perfected security interest in the Sterling Sale Contract. Specifically, Fleet contends that it was proper for Fleet to file its financial statements in New Jersey, because the property was located in New Jersey, creditors would know to look in New Jersey, and Fleet's actions were consistent with the opinion letter offered by Whippany's counsel. With respect to the opinion letter specifically, Fleet contends that the Bank-

ruptcy Court's decision will have a chilling effect on commercial lending practices, because lenders will be less likely to make loans if they cannot rely upon the four corners of an opinion letter.

In the alternative, Fleet contends that Article 9 of the Uniform Commercial Code ("U.C.C.") should not have been applied to Fleet's interest in the Sterling Sale Contract. In this regard, Fleet contends that the Bankruptcy Court should have concluded that Fleet received an enforceable, absolute assignment of Whippany's rights in the Sterling Sale Contract under the express terms of the Assignment Agreement, and that this assignment was not subject to Article 9 by virtue of the exclusions contained in Section 9–104(j).

In response, Whippany contends that the Bankruptcy Court correctly concluded that Fleet did not perfect its interest in the property, because it failed to file its financing statements at the location of Whippany's chief executive office, which is in Colorado. Whippany also contends that the Bankruptcy Court correctly concluded that Article 9 of the U.C.C. applies to Fleet's interest, because Fleet's interest resulting from the assignment from Whippany was not an interest in the real estate, but an interest in the Sterling Sale Contract. Because this interest is a general intangible interest, Whippany maintains that Article 9 of the U.C.C. applies. As for Fleet's arguments concerning the effect of the opinion letter offered by Whippany's counsel, Whippany contends that Fleet cannot perfect its interest through an opinion letter, and the opinion letter never gave an opinion on perfection of interests. Thus, Whippany contends that both the law and public policy support the Bankruptcy Court's decision.

## II. Standard of Review

■ The Court has jurisdiction to hear an appeal from the Bankruptcy Court

pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

■ As a threshold matter, the Court must determine whether the Bankruptcy Court correctly concluded that Article 9 of the U.C.C. applies to Fleet's interest in the Sterling Sale Contract. The determination of whether Article 9 applies to Fleet's interest in this case is governed by Section 9–104(j) of the U.C.C. which "excludes the creation or transfer of an interest in or lien on real estate including a lease or rents thereunder." As the Bankruptcy Court recognized, and Fleet acknowledged at the hearing, Fleet's interest is not an interest in real property but an interest in the proceeds from the Sterling Sale Contract (D.I. 11 at A00597–A00600), and therefore,

Fleet's interest in the Sterling Sale Contract is appropriately categorized as a general intangible interest. *See e.g. Frearson v. Wingold (In re Equitable Dev. Corp.)*, 617 F.2d 1152, 1156 (5th Cir.1980); *I.A. Durbin, Inc. v. Jefferson Nat'l Bank (In re I.A. Durbin, Inc.)*, 46 B.R. 595, 599 (Bankr.S.D.Fla.1985); *Borock v. NBD Dearborn Bank, N.A. (In re D.J. Maltese, Inc.)*, 42 B.R. 589, 591 (Bankr.E.D.Mich. 1984).

Fleet directs the Court to the Third Circuit's decision in *First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.)*, 59 F.3d 423 (3d Cir.1995), for the proposition that its interest is excluded from the requirements of Article 9 under Section 9–104(j). However, the *Jason Realty* case involved an assignment of rents under a lease. As the Bankruptcy Court correctly observed, Section 9–104(j) expressly excludes interests in leases or rents under leases from the requirements of Article 9, and therefore, *Jason Realty* is inapplicable to the circumstances in this case. (D.I. 11 at 00600). Accordingly, the Court concludes that the Bankruptcy Court correctly concluded that Fleet's interest in the proceeds of the Sterling Sale Contract is a general intangible interest governed by Article 9 of the U.C.C.

■ The Court must next determine if the Bankruptcy Court correctly concluded that Fleet failed to perfect its security interest as required by Article 9.[1] Section 9–103(3)(b) of the U.C.C. governs the perfection of a security interest in general intangibles and provides, in pertinent part, "the law (including the conflict of law rules) of the jurisdiction in which the debtor is located governs the perfection ... or nonperfection of the security interest." Colo.Rev.Stat. Ann. § 4–9–103(3)(b) (2000); N.J. Stat. Ann. § 12A:9–103(b) (2000).

---

[1] Fleet urges the Court to apply New Jersey law, while Whippany maintains that Colorado law applies. However, the Court's conclusions under either state's law would be the same, and therefore, the Court need not decide this issue.

The location of a debtor maintaining multiple places of business is the debtor's chief executive office. Colo.Rev.Stat. Ann. § 4–9–103(3)(3)(d) (2000); N.J. Stat. Ann. § 12A:9–103(3)(d) (2000). As the comments to the U.C.C. explain, the term "chief executive office" means the place from which the debtor manages its business operations. Colo.Rev.Stat. Ann. § 4–9–103(3)(d) cmt. 5(c) (2000); N.J. Stat. Ann. § 12A:9–103(3)(d) cmt. 5(c) (2000).

In this case, the Bankruptcy Court correctly concluded that Fleet was required to perfect its security interest in Colorado, because Whippany's chief executive office was in Colorado. In reaching this conclusion, the Bankruptcy Court correctly considered the manner in which Whippany managed its business and examined this issue from the perspective of where a creditor would normally look for credit information on the debtor. (D.I. 11 at A00631). The Court agrees with the Bankruptcy Court's conclusion, in light of the factual circumstances in this case, that Fleet was required to file its financing statement in Colorado to perfect its security interest.

Fleet contends that the Bankruptcy Court's decision is at odds with the Third Circuit's decision in *Mellon Bank, N.A. v. Metropolitan Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991). Fleet also requests the Court to consider the decision of the Bankruptcy Court in the Eastern District of New York in *Chase Manhattan Bank v. Nemko, Inc. (In re Nemko, Inc.)*, 209 B.R. 590, 602–603 (Bankr.E.D.N.Y. 1997), a decision which comments on *Mellon*. After reviewing these decisions in light of the facts and circumstances of this case, the Court is not persuaded by Fleet's argument. First, both *Mellon* and *Nemko* involved a situation in which the relevant companies had changed the location of their chief executive offices, resulting in confusion about the location of their offices. In this case, Whippany has never

changed the location of its offices, and therefore, the circumstances in *Mellon* and *Nemko* are distinguishable from the circumstances in this case. However, even considering the factors described in *Mellon* and *Nemko*, the Court concludes that the Bankruptcy Court's decision is consistent with these cases. In determining the location of the debtors' chief executive offices, the *Nemko* and *Mellon* courts considered a variety of factors including, the location of the chief executive offices, the location of the executive officers, the location of financial records and accountants, the listed principal offices on the contracts, the location of third party dealings with the debtor and the location of the main part of the debtor's business. As Whippany correctly points out, the purpose of analyzing these factors was to determine where the debtor manages the main part of its business, the precise inquiry which the Bankruptcy Court here made in rendering its conclusions.

Applying these factors, the Court is persuaded that the relevant factors point to Colorado as the location of Whippany's chief executive offices. Although the property at issue was located in Whippany, New Jersey, the personnel overseeing the remediation of the property were located in Colorado and Whippany's files and financial records were located in Colorado. In addition, Whippany's Colorado address appears on the relevant documents and agreements in this case, including the Sterling Sale Contract, the Assignment Agreement and the financing statements.

Fleet maintains that because the property was located in New Jersey and was the only property owned by Whippany, it was appropriate for Fleet to file in New Jersey to perfect its security interest under the "sole business volume" test described in *Mellon* and *Nemko*. As the Bankruptcy Court correctly recognized, however, a hypothetical, diligent creditor would not

know whether the debtor owned and managed more than just one piece of property, and it would not be reasonable for the creditor to check only the real estate records. (D.I. 11 at A00602–A00605). Further, the question is not where the main part or main asset of the debtor's business is located, but rather, from where the main part of the debtor's business is managed. In the Court's view, this is a particularly important distinction, where as here, the main business activity of the debtor is the management of real estate. As the Court has observed previously, the relevant factors in this case point to Colorado as the location from which Whippany managed its business, and therefore, the Court concludes that the Bankruptcy Court appropriately rejected Fleet's argument that the location of the property should govern the location of Whippany's chief executive offices.

As for the opinion letter of Whippany's counsel, the Court likewise agrees with the Bankruptcy Court that the opinion letter is not dispositive on the issue of location for filing. As courts have recognized, a secured creditor is not excused from the filing requirements for perfecting a security interest as a result of the creditor's error in filing its financing statement in the wrong jurisdiction, even where that creditor's error was based on its good faith reliance on the address provided by the debtor. *See e.g. In re Davis*, 274 B.R. 825, 828 (Bankr.W.D.Ark.2002); *In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 456–457 (Bankr.D.Vt.1995). Indeed, public policy supports the Bankruptcy Court's conclusion that the correct location for filing should not turn on the private representations of the parties, but on the public and objective information available to all creditors concerning where the debtor manages its business.

In sum, the Court agrees with and adopts the reasoning and conclusions articulated by the Bankruptcy Court in its decision on the record at the August 8, 2003 hearing. Accordingly, the Court will affirm the Bankruptcy Court's Order dated August 21, 2003, denying Fleet's motion for partial summary judgment.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the Order of the Bankruptcy Court dated August 21, 2003.

An appropriate Order will be entered.

### *FINAL ORDER*

At Wilmington, this 16th day of March 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Order of the Bankruptcy Court dated August 21, 2003 is AFFIRMED.