NATHAN MORRIS & another *vs.* JOSIAH BACON.

Suffolk. Nov. 22. 1876. — July 3, 1877. AMES & SOULE, JJ., absent.

A. made a promissory note payable to the order of B., and executed to him a mort-
gage of land as security therefor, which was duly recorded. B. indorsed the note
to C., and afterwards assigned the mortgage to D., and delivered to him another
note similar in terms to the one described in the mortgage. Both C. and D. acted
in good faith, and each paid a valuable consideration to B. *Held*, that C. was en-
titled in equity to an assignment of the mortgage from D.

BILL IN EQUITY by Nathan Morris and the Tremont National
Bank of Boston against Josiah Bacon, for the assignment to the
bank of a mortgage made by Morris to Abraham Jackson.
Hearing upon the pleadings and proofs before *Devens*, J., who
made a decree for the bank, from which the defendant appealed.
The facts appear in the opinion.

*F. V. Balch,* for the bank.

*C. Browne & Jabez S. Holmes,* for the defendant.

LORD, J. On April 1, 1870, the plaintiff Morris made a
promissory note for the sum of $4000, payable to the order of
Abraham Jackson in five years from that date, and executed a
mortgage at the same time of certain land in Boston to Jackson,
to secure the payment of the note, and delivered both note and
mortgage to Jackson, who caused the mortgage to be recorded
on April 5, 1870. On or about October 21, 1872, Jackson in-
dorsed the note to the Tremont National Bank as collateral secu-
rity for a loan to a larger amount, made at that time by the
bank to him, stating at the time that the note, which upon its
face purported to be secured by mortgage, carried the mortgage
with it.

This was the condition of the title to the note and mortgage
on or about March 2, 1875. The plaintiff bank was owner of
the note, and Jackson had the legal title to the mortgage in trust
for the bank. On that day Jackson undertook to sell the note,
with its security, to the defendant. He had, however, neither
the title, nor the possession of the note, nor any authority to sell
the same. He could therefore convey no title to it. In order
to seem to have a title which he could convey, he fraudulently
substituted another note for the note which the mortgage was

made to secure. This fraudulent substitution could give no right against the maker or the owner of the note. Neither Jackson nor the defendant could by any act, in the absence of the plaintiffs, convert the mortgage into a security for any other than the note which it was made to secure. Jackson fraudulently attempted to apply the mortgage to a note which it was not given to secure. Neither of the plaintiffs did anything, or allowed anything to be done, in furtherance of the fraud. If the plaintiff Morris had paid the note between 1870 and 1875, leaving the mortgage still in the hands of Jackson undischarged, no one would contend that Jackson could by any mode have made the mortgaged property liable to a new debt. No person could derive from Jackson any title under that mortgage, except a title as collateral security for the debt. If the debt itself was not in existence, the assignee could take under any circumstances, at most, only a naked legal title to the mortgage; if the debt existed, and was not transferred to the mortgagee, the mortgage would be held only in trust for that debt, not for a different debt. That the debt is the principal and the mortgage an incident, is a rule too familiar to require citations in support of it.

Assuming, for the sake of argument, that the note held by the defendant is a genuine note, the case finds that it is not the note which the mortgage was given to secure; and the plaintiff Morris has never created a lien upon his estate in favor of that debt, and it cannot be contended that Jackson could by any act of his create such a lien. If the holder of the true note had in fact consented that the mortgage might be assigned to the defendant as collateral security for another note of the same tenor and date, that could not have made it so. Whether in equity it might have operated as a conveyance of the true debt to the defendant we need not decide, for there is no claim or pretence that such holder did thus consent. There was simply neglect on the part of the plaintiff bank to take an assignment of the mortgage. The utmost hazard which the holder took was that Jackson might discharge the mortgage, in which case the note would still be a valid security; or Jackson might pass the legal title to another, who in law would become the trustee of the owner of the note.

This case is quite distinguishable from *Blunt* v. *Norris*, *ante,* 55. In that case the plaintiff acquired no rights beyond those of Samuel S. Jackson, who never owned the note, and who passed it, without indorsement, against the rights of the maker, so that there was no debt of the maker to which the mortgage could be incident. In this case Abraham Jackson was the *bonâ fide* owner of the note and the mortgage security, and transferred the note by indorsement before maturity, with the assurance that it was secured by mortgage.    *Decree affirmed.*