In re KENNEDY MORTGAGE
COMPANY, Debtor.

The FIRST NATIONAL BANK OF
BOSTON, Plaintiff,

v.

Robert W. LARSON, Trustee, Kennedy
Mortgage Company, Defendant.

Bankruptcy No. 81–01331.
Adv. No. 81–0270.

United States Bankruptcy Court,
D. New Jersey.

Jan. 26, 1982.

Davis & Reberkenny, Arthur J. Abramowitz, Cherry Hill, N. J., Pepper, Hamilton & Scheetz by J. Gregg Miller, Lloyd R. Ziff, Philadelphia, Pa., Jan Z. Krasnowiecki, Professor of Law, University of Pennsylvania Law School, Philadelphia, Pa., for plaintiff.

Greenbaum, Greenbaum, Rowe & Smith by David L. Bruck, Woodbridge, N. J., for defendant.

E. Robert Levy, Clark E. Alpert, East Orange, N. J., on the brief, amicus curiae, for Mortg. Bankers Ass'n of New Jersey.

Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan by Joseph Levow Steinberg, Roseland, N. J., for The Trust Co. of New Jersey.

Weiner & Weiner by Andrew E. Weiner, Haddonfield, N. J., and Schnader, Harrison, Segal & Lewis by Charles C. Hileman, III, Vincent P. Haley, David S. Hope, Philadelphia, Pa., for Indus. Valley Bank and Trust Co.

Archer, Greiner & Read by A. Fred Ruttenberg, Haddonfield, N. J., for Heritage Bank, N. A.

Riker, Danzig, Scherer & Hyland by Dennis J. O'Grady, Newark, N. J., for Fidelity Union Bank.

Raff, Scheider & Wiener by Alan D. Wiener, Newark, N. J., for Nat. State Bank of New Jersey.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

On March 9, 1981, an involuntary Petition for Relief was filed against the above named Debtor, Kennedy Mortgage Company (Debtor) and on the same day the Debtor consented to the Order for Relief under the provisions of the Bankruptcy Code, 11 U.S.C. 101 sequi.

Generally stated—the Debtor's principal activity was to process applications submitted to it for mortgages on real estate and for the advancement of the funds to the mortgage applicants necessary for completion of settlement. To that end, in addition to lending its own money, the Debtor entered into agreements with various banks and lending institutions for lines of credit whereby the Debtor was to be supplied with funds to carry out the mortgage settlements. The activity of the Debtor with such banks and lending institutions involved many mortgages totaling over forty (40) millions of dollars, as stated to me by the parties.

The banks with whom the Debtor established lines of credit are located in other States as well as New Jersey.

More specifically stated, as to the procedure followed between the Debtor and a lending bank, with whom the Debtor had an agreement establishing a line of credit, whereby the Debtor was put into actual receipt of funds, the transactions giving rise to the Complaint herein of the First National Bank of Boston (FNBB) are generally illustrative.

On August 19, 1980, FNBB and the Debtor entered into a Letter Agreement whereby FNBB agreed to extend to the Debtor a direct revolving warehousing line of credit not to exceed $10,000,000.00 and on that same date the Debtor executed its Demand Promissory Note in the principal sum of $10,000,000.00 with interest to float at the FNBB "Bank Rate". In conjunction therewith the Debtor executed a Letter of Credit and Security Agreement to the FNBB whereby the Debtor granted to FNBB a security interest in the mortgage notes and proceeds thereof to be pledged to FNBB to secure the Debtor's borrowings from FNBB pursuant to the Letter Agreement and the Demand Promissory note.

On February 13, 1981, the Debtor delivered to FNBB four (4) notes totaling the sum of $189,950.00 and on February 18, 1981, it delivered to FNBB a note for $44,150.00, a total of $234,100.00, upon which FNBB advanced to the Debtor the sum of $215,428.18 under the Letter Agreement and Note to it. Thus, the supplier of the funds, FNBB was given possession of the Notes executed by the five mortgagors arising out of the mortgage settlements.

At the time of the settlements the Debtor executed assignments of the mortgages to FNBB which were also delivered along with the original notes. The original mortgages were not delivered to FNBB because the Debtor delivered them to the proper office for recording. The Debtor also delivered various other papers as FNBB may have requested.

*The assignments of the mortgages to FNBB were not recorded.*

A bit of history is now in order as to the usual course of conduct of such financing by the lending banks. The financing by the so called "mortgage company", or mortgage broker, such as Kennedy, the Debtor, in this case, whereby the lending banks put up money to finance the mortgages is called "warehousing". The lenders have extended a line of credit to the mortgage company and within such limits lend money to the broker and then upon receipt of the note and unrecorded assignment of the mortgage "warehouse" the instruments for a period of time and then possibly sells them to investors in mortgages or transfers them into a pool of mortgages purchased by the Government National Mortgage Association known as "GNMA" or similar entities.

Consistent with such practice and procedures FNBB was in possession on March 9, 1981, the date of the commencement of proceedings in this Court, of the five notes and unrecorded assignments of mortgages as set forth above.

Thereafter, FNBB was advised by the Trustee that the notes were to be sold by the Trustee and become part of GNMA pool being formed by the North Carolina National Bank Mortgage Company (NCNB).[1] FNBB did transmit the instruments to NCNB in trust and upon sale of the pool the lien claimed by FNBB was to be trans- ferred to the proceeds of sale, with the proceeds to be deposited in an escrow account. Consistent therewith I entered an Order dated March 19, 1981, and the notes and mortgages were sold to GNMA and the proceeds of the sale were deposited in an escrow account with the Fidelity Union Trust Company located in the State of New Jersey.[2]

The sum on deposit associated with the 5 notes and mortgages is $222,395.00.

The parties in this estate, in the interest of preservation of the assets and administration of the Estate, had entered into a stipulation dated the same day, March 19, 1981, dealing with such matters, as in the present issue, whereby it was agreed in paragraph 11

"There shall be paid to FNBB, IVB and Heritage the funds in their respective escrow accounts upon establishment of the validity and priority of their respective liens, but not more than the amount secured by such established liens."

The Order, to which I have referred, further provided, inter alia, that—

"Interest on the Escrow accounts shall be payable as the interests of the parties shall appear as determined by the Court."

FNBB now seeks to have me determine that it had a valid lien upon the notes and mortgages and has a right to payment of $222,395.00 plus interest from the escrow account deposited with the National State Bank of Elizabeth.

FNBB's complaint in this case seeking such payment is without prejudice to the rights of FNBB to file other complaints relative to its collateral and any proof of claims secured or unsecured, as it may deem appropriate in these proceedings, and it claims to have liens on other assets of the Debtor.

---

1. Purchase of notes and mortgages by GNMA is not on an individual basis. GNMA purchases such notes and mortgages in very large total numbers and sums and banks or mortgage brokers combine such instruments to make a "pool" of the required amount. In this instance the pool was three million ($3,000,-000.00) dollars.

2. The escrow account was later moved to National State Bank of Elizabeth, New Jersey, as a better rate of interest was obtained.

The Order of March 19, 1981, also called for Industrial Valley Bank and Heritage Bank to deposit notes and mortgages into the escrow account in the sum of $75,620.00 and $280,-582.50 respectively, consisting of 2 and 6 mortgage and note transactions respectively.

Basically therefore this Complaint seeks a determination of its alleged lien upon the Escrow Fund to the extent of the 5 notes and mortgages which it sold into the GNMA pool.

The other Banks which dealt with the Debtor sought to intervene in this matter and, after a hearing, the applications were denied but I afforded such other parties time within which to file their complaints whereby I would determine if debts due them were secured by reason of the possession of the notes and the unrecorded assignments of mortgages. In the interval, since that time, a settlement has been proposed by the Trustee to such creditors, particularly as to the mortgages which are being serviced by the Trustee or through another entity and also as to the free assets. The verbal response to the proposed settlement was favorable by such Banks. The First National Bank of Boston, the present Plaintiff, has entered a reserved approval as to any other debt due it in the event the present litigation is resolved favorably to FNBB.[3]

In the interim, to wit, on October 5, 1981, the FNBB filed a Motion for a Summary Judgment under the provisions of Bankruptcy Rule 756 (F.R.C.P. 56), supported by a brief and affidavits, alleging,

"There is no genuine issue as to any material fact and that FNBB is entitled to judgment as a matter of law (i) determining that FNBB has a validly perfected lien with respect to the five transactions at issue (and which became a part of a GNMA pool pursuant to a Stipulation and Order of this Court dated March 19, 1981, a copy of which is attached as Exhibit "A" to the Memorandum in support of this Motion,) and (ii) directing that Robert W. Larson, Trustee, pay to FNBB $222,395.00 from the Escrow Account established pursuant to said Stipulation and Order which contains the proceeds of sale of the notes subject to FNBB's lien, plus interest which has accrued on said escrow account and directing further that Robert W. Larson, Trustee, pay to FNBB an additional amount representing its attorneys fees, costs and per diem interest in excess of the amount in said escrow account."

By Order of October 20, 1981, the Trustee was directed to file his reply brief by October 30, 1981, and the names of any witnesses he intended to produce at the adjourned date of hearing for November 25, 1981, on the Motion for Summary Judgment and the other warehousing banks were to file any briefs they desired to file by October 30, 1981.

The brief of the Trustee, submitted by his attorney, David L. Bruck, is commendable for its forthright position as to the validity of FNBB's perfected security interest in the five notes and mortgages involved in this obligation.

The brief reads,

"For the foregoing reasons, the Trustee acknowledges FNBB's validly perfected security interest in the five notes and mortgages which are the subject of the within suit and consents to a judgment in favor of FNBB in the amount of the proceeds of the sale of the mortgages and notes, which proceeds are now held in an escrow account at National State Bank of Elizabeth, New Jersey."

Notwithstanding the position taken by the Trustee I shall treat with the issues because several of the Banks by their Answers on application to Intervene dispute the conclusion that FNBB has a perfected lien as to the five mortgages and now the proceeds thereof. Several of the applicants to intervene agree with the legal conclusion of the Trustee.

Furthermore the exact issue before the Court as to whether unrecorded assign-

3. At the hearing before me on November 25, 1981, I directed that the settlement be disseminated by December 31, 1981, and a hearing be held on the settlement on January 25, 1982. If not settled then all interrogatories and depositions are to be completed by February 15, 1982, and a pre-trial held on March 2, 1982 with trial during the week of March 15, 1982.

The date for hearing on the settlement has now been fixed for March 17, 1982, at 10:00 a. m.

ments of mortgages, together with notes, in the possession of the plaintiffs, vested a secured status in the plaintiffs, has not been decided, or at least reported, in any decision. An article by Gregory M. Shaw, 79 Columbia L.Rev. 1414 (1979) does treat with this issue.

At first blush, because of the indoctrination that is prevalent today in the commercial world where a creditor has not recorded its lien, pursuant to the requirements of the Uniform Commercial Code, it would appear that FNBB would not have rights superior to other creditors, and in this case superior to the Trustee of the Debtor Estate, who stands in the position of a judgment creditor holding a levy and lien on the Debtors assets. That would appear to be the fact in this case where FNBB obtained possession of a note payable by the mortgagor to the Debtor which note is only a promise to pay or acknowledgment of the debt in written form. The debt to the Debtor, represented by a note was secured by a mortgage, duly recorded, which protected the *Debtor* mortgagee, against any creditors of the *mortgagor*.

■ A mortgage instrument, though manifesting a lien on real estate, is, actually personal property as to the mortgagee, and in order to be effective in favor of the *mortgagee* as against other *creditors of the mortgagor* must be recorded in the proper office where the real estate is located. The rights of the creditors of the mortgagor are inferior to the rights of the mortgagee.

In this case the plaintiff received possession of the note which evidenced the debt and an assignment of the mortgage which it did not record.

The question therefore is—does the Trustee as a judgment creditor of the debtor, *mortgagee*, holding a lien and levy, have a superior right to the mortgages (and now their proceeds) over FNBB because the assignments to it were not recorded.

Great stress has been made of the fact that a decision which would deny FNBB a security interest in the mortgages would be upsetting to the commercial world.

It was disclosed that mortgage brokers arrange for placing of mortgages throughout the entire United States in the hundreds of millions of dollars and they obtain funds for such purposes from banks and other lending institutions and only surrender possession of the notes and deliver unrecorded assignments of the mortgages upon completion of the mortgage settlement. The bank and lending institutions warehouse the loans and sell them to investors or to GNMA or governmental agencies in blocks of millions of dollars. The method now used for financing of the mortgages would be seriously affected if every assignment had to be recorded. It would require searches of title and delay in transfers as well as involve considerable expense for recording and the recording of assignments. The easy access that mortgage brokers now have for a source of funds would be disrupted and reduce the availability of funds in the mortgage market. However, I cannot let that business practice be the sole and dominant factor in my decision in upholding the right of FNBB to the proceeds of a mortgage under an unrecorded assignment thereof, if the provisions of the Uniform Commercial Code and the Bankruptcy Code clearly dictate a different conclusion. If the Uniform Commercial Code or Bankruptcy Code or State Statutes dictated with certainty that an assignment of a mortgage on real estate be recorded in order to render the lien effective against creditors of the assignor then lending institutions would be obliged to record such assignments regardless of the cost and inconvenience. To hold otherwise would constitute judicial legislation on my part.

However, in determining the interpretation to be made of the pertinent statute, consistent with the limitations imposed upon a Court in determining the rights of litigants which flow from statutes, whereby the Court does not engage in judicial legislation, I am also mindful that the interpretation of such statutes does and should be considered in the light of modern business practices as stated in *Bristol Associates*, 505

F.2d 1056, 1062 (3 Cir. 1974). Therein the Court held

"While a uniform trade practice does not constitute proof that the legal consequences of the practice are what those in the field take them to be, neither can it be assumed that a legislature which passed the Code and which has considered and passed amendments to it on several occasions would let stand practices or beliefs which it disapproved. In fact, the amendments passed by the Legislature have tended in the other direction, restricting the application of Article 9 when transactions touch real property. (See discussion supra.)

Where language is susceptible of two reasonable meanings, a court, in the commercial field, should choose that interpretation which comports with current universal practices in the business world."

■ Consistent therewith, I am of the opinion that it is not necessary under the Uniform Commercial Code or the Bankruptcy Code or State Statutes for an assignee of a mortgage to record the assignment of the mortgage in order to have a secured status.

In interpreting and construing the applicable law the provision of the Uniform Commercial Code dealing with General Provisions must be observed wherein it is provided:

12 A:1–102

(1) This Act shall be liberally construed and applied to promote its underlying purposes and policies.

(2) Underlying purposes and policies of this Act are

(a) to simplify, clarify and modernize the law governing commercial transactions;

(b) to permit the continued expansion of Commercial practices through custom, usage and agreement of the parties;

(c) to make uniform the law among the various jurisdictions.

More particularly as to the Uniform Commercial Code sections which apply to this case dealing with ·Secured Transactions I observe the following provisions of 12A:9;—Policy and Scope of Chapter,

"102. Policy and Scope of Chapter

(1) Except as otherwise provided in 12A:9–103 . . . and in 12A:9–104 on excluded transactions, this Chapter applies so far as concerns any personal property and fixtures within the jurisdiction of this State.

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts on contract rights;

(2) This Chapter applies to security interests created by contract including pledge, <u>assignment</u>, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended on security. This Chapter does not apply to statutory liens except as provided in 12A:9–310 (underlining added).

(3) The application of this Chapter to a security interest in a secured ·obligation is not affected by the fact that the obligation is itself secured by a transaction or <u>interest</u> to which this Chapter <u>does not apply</u>" (underlining added)

"Section 104—Transactions Excluded from Chapter.

This Chapter does not apply

(j) except to the extent that provision is made for fixtures in 12A:9–313, to the creation or transfer of an <u>interest in</u> or lien on <u>real estate</u>, including a lease or rents thereunder; (underlining added)

"Section 302. When Filing Is Required to Perfect Security Interest; Security Interests to Which Filing Provisions of This Chapter <u>Do Not Apply</u>.

(1) A financing statement must be filed to perfect all security interest *except* the following:

(a) a security interest in <u>collateral in possession</u> of the secured party under 12A:9–305;" (underlining added)

"304—A Security interest in chattel paper or negotiable documents may be perfected by filing. A security interest in instruments (other than instruments which constitute part of chattel paper) <u>can be perfected</u> only by the secured party's <u>taking possession</u>, except as provided in subsections (4) and (5)." (Underlining added)

"Section 305—<u>When Possession</u> by Secured Party Perfects Security Interest Without Filing.

A security interest in letters of credit and advices of credit .... goods, instruments, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral.... A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Chapter."

The foregoing sections require a bifurcation in treatment of the note and the unrecorded assignment of the mortgage.

Clearly as to the note executed by the mortgagor to the Debtor the plaintiff, FNBB has a possessory lien thereon. No creditor including the Trustee of the Debtor Estate could claim a right to the obligation represented by the tangible note in the possession of FNBB.

In the *Matter of Bristol Associates, Inc.,* 505 F.2d 1056, 1061 (3 Cir. 1974) the court clearly resolved the question whether a promissory note falls within the scope of Article 9 by virtue of its status as an instrument. As stated therein possession of such an instrument creates a perfected lien in favor of the FNBB.

To the same effect are the cases in the *Matter of Staff Mortgage and Investment Corporation,* 550 F.2d 1228 (9 Cir. 1977) also known as *Huffman v. Wikle* and *In re Staff Mortgage and Investment Corporation,* 625 F.2d 281 (9 Cir. 1980) also known as *Greiner v. Wilke,* wherein the creditors were denied a secured status because they did not have possession of the notes.

The *Bristol Associates* case involved a lease on real estate wherein the court held that Section 9–104(j) excluded the assignment of a lease and rents thereunder from the operation of Article 9 (p. 1064)

Under the provisions of Sections 302(1)(a) and 304(1) and 305, FNBB perfected its lien on the notes as security for the debt by reason of possession of the notes.

Does the U.C.C. require recording the assignment of the mortgage associated with the note? Can a creditor of the Debtor issue an execution upon the asset represented by the mortgage of record standing in the name of the Debtor as mortgagee? He can do so but the rights that would flow to such execution creditors would be limited by intervening rights of other parties such as the rights of FNBB arising out of the assignment of the mortgage even though the assignment was unrecorded. This conclusion is fortified by the expression of the Supreme Court of New Jersey in *Burke v. Hoffman,* 28 N.J. 467, 475, 147 A.2d 44 (1958) wherein the Court stated

"A mortgage debt, although a chose in action is yet, where the subject of the security is land, 'an interest in land,' and priorities are governed by the rules applicable to interests in land, and not by the rules which govern interest in personalty.

Pomeroy Ibid., ¶ 697. See also ¶ 712."

See also *Garnick v. Serewitch,* 39 N.J.Super. 486, 496, 121 A.2d 423 (Ch. 1956) wherein it was stated

"A mortgage is a lien or an interest in realty." citations omitted.

The application for the reasons expressed in *Bristol Associates,* supra, dealing with subsection (j) of Section 12A:9–104 which relates to transactions to be excluded from Chapter 9, and subsection (3) of 12A:9–102 as interpreted by the comment 4 associated with subsection (3), which relates to an obligation secured by a transaction, are indicated in this case. Specifically dealing with 12A:9–102(3) as it relates to mortgages on real estate associated with notes which have

been assigned the comment 4 reads as follows:

"An illustration of subsection (3) is as follows:

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest. See Section 9–104(j). But under Section 3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course." (Underlining added)

In dealing with "*other law*" the law of the State of New Jersey is stated in *Rose v. Rein*, 116 N.J.Eq. 70, 73, 172 A. 510 (E & A 1934) which is in accord with *Leonard v. Leonia Heights Land Company*, 81 N.J.Eq. 489, 87 A. 645 (E & A 1913) wherein the court held that an unrecorded assignment of a mortgage is not void as against subsequent judgment creditors. The references to the various statutes in these two decisions may now be found in N.J.S.A. 46:16–1, which provides all deeds or instruments enumerated therein, which included mortgages and assignment of mortgages affecting real estate may be recorded in the office of the county recording offices wherein the real estate is situate.

The effect of recording instruments described in 46:16–1 is found in 46:21–1 wherein it is stated that such filing of record shall be notice to all subsequent creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and the contents thereof. In addition, 46:17–1 provides for the Registration of Mortgages in the office of the courts recording officer of the county in which the real estate is situate. Finally, as it concerns the issues before me, the provisions of N.J.S.A. 46:18–3 and 4 provide for an indexing record of assignment of mortgages and entry in books of records of assignments of mortgages.

The fact that assignments of mortgages may be recorded does not affect the validity of an assignment of a mortgage which has not been recorded. *Leonard v. Leonia Heights Land Company*, supra; *Clift v. Scheutz*, 83 N.J.Eq. 442 (Ch. 1914) 91 A. 815. The purposes of recording is to establish priorities and rights of individuals who are affected by chain of title or encumbrances on the real estate such as grantees of real estate from record title holders thereof or innocent mortgagors who are obligated to make payment on their mortgages.

As stated hereinabove, the nature of the property involved, namely a mortgage, though personal property of itself, represents an interest in real estate and therefore it is to be included as one of the included items covered by the Uniform Commercial Code under the provisions of Section 9–104(j) which, repeating, reads

"This Chapter does not apply ...(j) ... to the creation of an interest in or lien on real estate ..."

This construction given to this subsection is a commercially reasonable interpretation. *Bristol Associates*, supra 1063; *In re Middle Atlantic Stud Welding Co.*, 503 F.2d 1133 (3d Cir. 1974).

The philosophy of all recording acts, be it as to personalty or realty, is to give notice to possible later purchasers, grantees, creditors and assignees of the status of title or prior interest of any entity in the property involved. In the instant case there was a valid recorded mortgage supported by a note evidencing an indebtedness by the

owner of the property, the mortgagor, to the creditor, Debtor, Kennedy.

Any one seeking to buy the property or further encumber the property or obtain an assignment of the mortgage was on notice of a mortgage to Kennedy. They would be obliged to inquire of the owner by a declaration of no-setoff as to the amount admitted due and recognition by the mortgagor that no defense was claimed and that the lien was still in existence; an inquiry would be necessary of the mortgagee as to the amount outstanding on the indebtedness. Should an assignment of the mortgage not be of record then payment to the mortgagee in satisfaction of the mortgage by any one without knowledge of the assignment would be effective against the holder of the unrecorded assigned mortgage. However, the purposes of the recording statutes are being served, and under *Rose v. Rein*, supra and *Leonard v. Leonia Heights*, it is not necessary to record an assignment of the mortgage. Moreover, one important facet must now be recognized—a mortgage is security for a debt. Without the manifestation of the debt, usually evidenced by a note or bond, the mortgage instrument itself is subject to attack. The lien of a mortgage is regarded as no greater than the actual debt secured.

"The mortgage is regarded primarily as a security; the debt is the principal fact, and the mortgage is collateral thereto."

*Grennon v. Kramer*, 111 N.J.Eq. 337, 340, 162 A. 758 (E & A 1932) 55 Am.Jur.2d 133. The existence of an obligation to be secured is an essential element of a mortgage. *New Orleans National Banking Association*

*v. Adams*, 109 U.S. 211, 3 S.Ct. 161, 27 L.Ed. 910 (1883). *Conway v. Alexander*, 7 Cranch (U.S.) 218, 3 L.Ed. 321; *Bogk v. Gassert*, 7 Mont. 585, 19 P. 281, aff. 149 U.S. 17, 13 S.Ct. 738, 37 L.Ed. 631 (1893). *Mardirossian v. Wilder*, 76 N.J.Super. 37, 183 A.2d 761 (Ch. 1962). As stated in Am.Jur.2d 133.

"The existence of an obligation to be secured is an essential element of a mortgage. The mortgage has no efficacy if unaccompanied by a debt or obligation, either preexisting, created at the time, or contracted to be created. Accordingly, where the obligation secured fails, the mortgage is likewise commonly considered to be a nullity, and a mortgage or deed of trust in the nature of a mortgage given to secure an obligation void by positive prohibition of laws is of no force." [4]

In this case, the FNBB is the owner of the note, secured by the mortgage. Anyone interested in acquiring an interest in the mortgage would be obliged to obtain an interest in the debt. The Trustee in this case could not realize upon a mortgage if he did not own the obligation represented by the note. The failure to record the assignment of the mortgage would not be fatal to the right of FNBB to realize upon the mortgage as against parties such as judgment creditors of the Debtor because FNBB has a perfected lien on the note and the mortgage is only collateral to the note.[5] The mortgage without the debt is of no effect.[6]

For the foregoing findings of fact and conclusion of law, I find that FNBB has a perfected security interest in the five notes and mortgages and that the Trustee herein has no interest in the mortgages given to

---

**4.** I am not herein concerned with the question whether there is personal liability for the debt in the event of a deficiency between the value of the property and the amount due on the obligation after foreclosure. See 55 Am.Jr. 134, 135.

**5.** I emphasize that the question of equitable rights of mortgagors who make payments to the original mortgagee or to assignees with recorded assignments and who have no knowledge of the unrecorded assignment of the mortgage, or the rights of other assignees of the mortgage who also obtain the indicia of the debt and record their assignments are not involved in this case. The issue in this case relates only to the rights of FNBB as against the Trustee who stands in the shoes of a judgment creditor possibly holding a lien and levy on the assets of the Debtor.

**6.** The contents of article by Gregory M. Shaw, Security Interests in Notes and mortgages determining the Applicable Law, 79 Columbia L.Rev. 1414 (1979), has been noted by me.

secure the notes. The notes and mortgages having been sold to GNMA through a pool, the plaintiff, FNBB has a lien upon the proceeds of such sale including the interest which has accrued thereon.

■ The demand for counsel fees by FNBB, to be paid from the other assets of the Debtor's Estate, is denied. The principles followed by United States jurisprudence of not allowing counsel fees to successful parties except from funds which are the subject matter of the suit, such as interpleaders, etc.,[7] is to be followed in this matter. FNBB is receiving the entire fund created by the sale of the notes and mortgages.

Furthermore, the Trustee was justified in resisting the payment to the plaintiff in this case until a determination was made of the validity of the lien in favor of FNBB. The provision of F.R.C.P. 54(d) allows costs to the prevailing party, "unless the court otherwise directs." See also B.R. 754, Advisory Committees—note Subdivision (b)

> "... Subdivision (b)(1) preserves the traditional approach of leaving the taxation of costs in such proceedings to the court's discretion."

Each party shall bear their own costs.

Let an ORDER be entered in accordance with the foregoing findings of fact and conclusions of law.

---

7. For excellent listing of when counsel fees are allowable see N.J.Rule 4:42–9 vz, matrimonial; fund in court probate action; foreclosure; insurance policy; permitted by statute.