In re Philip D. NICHOLS, Sandra L. Nichols, Debtors.

John E. MALONEY, Trustee, Plaintiff,

v.

STEWART TITLE & TRUST OF TUCSON; Eagle Bank of Charleston; and Boatmen's National Bank of Charleston, Defendants.

Bankruptcy No. 86–90534.
Adv. No. 86–9155.

United States Bankruptcy Court,
C.D. Illinois.

Jan. 15, 1988.

**872**

John E. Maloney, Urbana, Ill., Trustee.

John Barr, Decatur, Ill., for Eagle Bank.

James Grant, Charleston, Ill., for Boatmen's Bank.

Eileen W. Hollowell, Tucson, Ariz., for Stewart Title.

## OPINION

LARRY L. LESSEN, Chief Judge.

This matter is before the Court on the Trustee's complaint for the turnover of a promissory note from Martin and Debora Wood which is secured by a deed of trust relating to certain property in Pima County, Arizona. Payments under the note are made to Stewart Title & Trust of Tuscon as escrow agent, and Stewart in turn forwards the payments to the Debtors. Eagle Bank of Charleston and Boatmen's National Bank of Charleston both claim a priority security interest in the proceeds of the note. The Trustee counters that neither bank perfected a security interest in the note, and that the Trustee therefore has superior rights in the note pursuant to his status as an ideal lien creditor under 11 U.S.C. Sec. 544(a). The parties have stipulated to the facts, and agree that the matter may be decided as a question of law.

In 1981, the Debtors sold their home in Tuscon, Arizona, to Martin and Debora Woods. The purchase price of the property was $165,000.00, and the agreement was subject to the assumption of a first mortgage on the property in the amount of $58,300.00. Since the Woods did not have sufficient cash to pay the remaining balance, the Debtors agreed to help finance a portion of the purchase price by taking back a note and a second deed of trust.

At the August 17, 1981, closing, the Woods made a note to the Debtors in the principal amount of $61,679.15, payable in monthly installments of $882.40 with an annual interest rate of 12%. As security for the note, a deed of trust and assignment of rents was given and recorded.

An escrow was created and Stewart Title & Trust of Tuscon was named as escrow agent. Stewart held the original note and original deed of release. Stewart received all payments from the Woods, and forwarded them to the Debtors.

The Debtors eventually assigned the payments to be received under the note to two different banks as security for loans. On January 14, 1982, the Debtors assigned their interest in the note to the Charleston National Bank, now known as the Boatmen's National Bank of Charleston, as security for a $30,000.00 loan. While the assignment does not specifically refer to the note, it does refer to the agreement of July 10, 1981, the purchase of the Pima County real estate, and the obligations of the Woods to the Debtors through the Stewart Title Company.

On February 26, 1982, the Debtors made a second assignment in identical language to the Charleston National Bank to secure a $16,800.00 loan. Charleston National Bank did not contact the escrow agent or record any documents at this time.

On April 23, 1984, the Debtors assigned the note to the Eagle Bank of Charleston. On April 24, 1984, Eagle notified the escrow agent in writing of the assignment.

On July 20, 1984, Charleston National Bank notified Stewart Title & Trust in writing of the two assignments by the Debtors of the note to the Charleston National Bank. Stewart acknowledged receipt of the two assignments on July 26, 1984, but stated that it had not been advised to release the $20,000.00 assignment from April, 1984. Stewart also advised the Charleston National Bank about the mechanics of recording the assignments.

On September 1, 1984, the Debtors gave an assignment of the beneficial interest under the deed in trust dated August 17, 1981, to the Charleston National Bank. On September 6, 1984, Charleston National Bank forwarded to Stewart Title & Trust

the deed of assignment, deed of release, and fee for recording. This assignment was recorded on September 19, 1984, in Arizona.

No other assignments, security interests, or claims of any type or nature were made by the Debtors to any other party of the subject note. In addition, there were no other notices of security interest or claims of any type or nature made orally or in writing to Stewart Title & Trust pertaining to the subject note, other than that of the Eagle Bank on April 24, 1984, and the notices of the Charleston National Bank on July 20, 1984, and September 6, 1984.

The Debtors subsequently filed their Chapter 11 petition. On August 14, 1986, the Debtors filed the instant complaint for turnover order seeking the proceeds from the Martin and Debora Wood note. Since that time, the petition has been converted to a Chapter 7 proceeding and the Trustee has assumed the Debtors' position.

█ Under the Bankruptcy Code, the Trustee in bankruptcy has the rights of a judgment lien creditor as of the commencement of the bankruptcy case. 11 U.S.C. Sec. 544(a). The Trustee's rights as a judgment lien creditor are governed by applicable state law. *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 669 (Bankr.S.D.N. Y.1985).

The initial question before the Court is whether this matter is governed by Article 9 of the Uniform Commercial Code or by Arizona real estate law. Boatmen's National Bank of Charleston argues that this is a real estate transaction, and therefore governed by the real estate laws of Arizona. Both the Trustee and the Eagle Bank of Charleston argue that Article 9 of the UCC governs this transaction.

Ill.Rev.Stat., Ch. 26, Sec. 9–104(j) provides that Article 9 "does not apply ... except to the extent that provision is made for fixtures ... to the creation or transfer of an interest in or lien on real estate ...". This Code section clearly suggests that mortgage notes are excluded from Code coverage.

On the other hand, Ill.Rev.Stat., Ch. 26, Sec. 9–102(2) provides:

This Article applies to security interests created by contract including pledge assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This chapter does not apply to statutory liens except as provided in Section 9–103.

The subsection which immediately follows, Sec. 9–102(3), suggests that the fact that the transaction involves a mortgage does not take it outside Article 9:

The application of this Article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply.

Official Comment No. 4 develops the following illustration of subsection (3):

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, *when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage.* This Article leaves to other law the question of the effect on rights under the mortgage of delivery or nondelivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest. See Section 9–104(j) (Emphasis added).

Thus, there is an apparent conflict between Sec. 9–102 inclusion and Sec. 9–104(j) exclusion. Some courts addressing this issue have held that Article 9 is applicable to the assignment of the note and mortgage. *Greiner v. Wilke*, 625 F.2d 281 (9th Cir. 1980); *In re Bruce Farley Corp.*, 612 F.2d

1197 (9th Cir.1980); *Huffman v. Wilke,* 550 F.2d 1228 (9th Cir.1977); *Landmark Land Co. v. Sprague,* 529 F.Supp. 971 (S.D.N.Y. 1981). There is another line of cases, however, which hold that Article 9 is applicable to the assignment of the note, but is not applicable to the assignment of the mortgage or deed of trust. *In re Maryville Savings & Loan Corp.,* 743 F.2d 413, 416 (6th Cir.1984); *In re Kennedy Mortgage Company,* 17 B.R. 957, 963–65 (Bankr.D.N. J.1982); *In re Bristol Associates, Inc.,* 505 F.2d 1056, 1061 (3rd Cir.1974).

*In re Kennedy Mortgage* and *In re Maryville Savings & Loan Corp.* are particularly instructive and merit close attention. In *Kennedy Mortgage,* the assignee took possession of the notes but did not record notice of the assignments of the real estate mortgages securing the notes. The Court held that the assignee perfected its security interest by taking possession of the notes and that the failure to record the assignments of the mortgages was not fatal to the secured claim of the assignee. In reaching this conclusion, the Court recognized that although a mortgage is an interest in real property for some purposes, it is also a device used to secure payment due under a promissory note, which is personal property. 17 B.R. at 964. Anyone interested in claiming the benefit of the security must first establish an interest in the note itself. *Id.* at 965. Whereas the transfer of an interest in the note conveys the benefit of the security, the mortgage alone is of no value without the debt it secures. *Id.* Since the debt is the "principal fact," and the mortgage merely collateral thereto, anyone interested in claiming an interest in the underlying real property was required to first establish an interest in the note. *Id.* The assignee in *Kennedy Mortgage* had established its interest in the five notes at issue by taking possession of them. Therefore, the Court found that the assignee had a perfected security interest in the notes and the Trustee had no interest in the mortgages given to secure the notes.

*In re Maryville Savings & Loan* involved the inverse factual situation. The *Maryville* assignee recorded the assignments with the Register of Deeds, but did not take possession of the notes. The Bankruptcy Court found that Article 9 was applicable to the promissory notes and the deeds of trust securing the notes. 27 B.R. 701 (Bankr.E.D.Tenn.1983). The District Court remanded, finding that Article 9 did not apply. 31 B.R. 597 (E.D.Tenn.1983). On appeal, the Sixth Circuit affirmed in part and reversed in part. 760 F.2d 119 (6th Cir.1985). The Court of Appeals reconciled the apparent conflict between Sec. 9–102(3) and 9–104(j) by holding that Article 9 applied in regard to the promissory notes but not in regard to the deeds of trust. *Id.* 743 F.2d at 416. Since the assignee did not take possession of the notes, the Court found that the assignee's security interest in the notes was not perfected. However, the Court further found that the assignee's security interest in the deeds of trust was a perfected interest. In a subsequent clarifying opinion, the Court found that the existence of the deed of trust did not render the transaction predominantly "real estate related" because the transaction was similarly concerned with promissory notes. 760 F.2d 119, 121 (6th Cir.1985). Since the assignee did not perfect its security interest in the notes under the Uniform Commercial Code, the Court held that the trustee was entitled to the proceeds of the notes received without resort to foreclosure. *Id.* at 121. However, the Court cautioned that the result might be different if foreclosure of the deeds of trust brought about a realization of funds. *Id.*

█ It is clear from the foregoing cases that a security interest in the notes is governed by Article 9 of the Uniform Commercial Code, not Arizona real estate law.

Ill.Rev.Stat., Ch. 26, Sec. 9–301(1)(b) provides that a "lien creditor" takes priority over unperfected security interests. Ill. Rev.Stat., Ch. 26, Sec. 9–301(3) defines "lien creditor" to include a trustee in bankruptcy. Thus, both Sec. 544 of the Bankruptcy Code and Sec. 9–301 of the Uniform Commercial Code provide that a trustee's interest as a lien creditor is superior to those security interests which are unperfected as of the filing of the petition.

Under the Uniform Commercial Code, the only way for a party to perfect an assignment of a note is for the secured party to take possession of the note. *See, In re Isbell,* 27 B.R. 926, 932 (Bankr.W.D. Wis.1983). Ill.Rev.Stat., Ch. 26, Sec. 9-304(1) specifically provides that a security interest in money or instruments can only be perfected by the secured party taking possession of the collateral. Ill.Rev.Stat., Ch. 26, Sec. 9-305 describes when possession by a secured party perfects a security interest:

> A security interest in ... instruments may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailer, the secured party is deemed to have possession from the time the bailer receives notification of the secured party's interest.

"Possession" is not defined in the Commercial Code. The Code Comment states only that possession may be by the secured party himself or by an agent on his behalf and that the debtor or a person controlled by him cannot qualify as such an agent for the secured party.

Neither the parties nor the Court have found any Illinois cases which discuss perfection by possession in the context of an escrow arrangement. However, the Illinois Code Comment to Sec. 9-305 cites two cases which are particularly relevant to this issue, *In re O.P.M. Leasing Services, Inc.,* 46 B.R. 661 (Bankr.S.D.N.Y.1985) and *In re Copeland,* 531 F.2d 1195 (3rd Cir. 1976). Although the Code Comment does not have the force of law, it is strong indication of the legislative intent behind this Code provision.

In *Copeland,* the debtor personally guaranteed a loan by Pension Benefit. The debtor pledged certain stock as collateral for the loan. An escrow agreement was entered into whereby a trust company was designated escrow holder of the pledged stock. There was subsequently a default on the loan, and Pension Benefit indicated its intention to demand surrender of the escrowed stock. The debtor then filed bankruptcy, where he argued that he had a superior right in the stock because Pension Benefit's security interest was unperfected on the date the petition was filed. The Court noted that the possession requirement of Sec. 9-305 served to impart notice to prospective creditors of the possessor's possible interest in the collateral. 531 F.2d at 1203. Although possession by the debtor or a person closely associated with the debtor is clearly not sufficient to alert prospective creditors that the debtor's property is encumbered, the Court stated that it did not necessarily follow that the collateral must be in the sole dominion and control of the secured party. 531 F.2d at 1204. Instead, the Court found "that possession by a third party bailee, who is not controlled by the debtor, which adequately informs potential lenders of the possible existence of a perfected security interest satisfies the notice function underlying the 'bailee with notice' provision of Sec. 9-305". *Id.* Applying this test, the Court found that the trust company's possession of the stock afforded the requisite notice to prospective creditors so that it qualified as a "bailee with notice" under Sec. 9-305. Therefore, the Court concluded that the trust company's possession perfected Pension Benefit's security interest. *Id.* 531 F.2d at 1205.

In reaching this conclusion, the *Copeland* Court distinguished *In re Dolly Madison Industries, Inc.,* 351 F.Supp. 1038 (E.D.Pa.1972), aff'd mem., 480 F.2d 917 (3rd Cir.1973), a case relied on by the trustee in the case *sub judice.* In *Dolly Madison,* a stock was sold by means of the simultaneous execution of a purchase agreement, promissory note, and escrow agreement. In order to secure payment of the purchase price of the stock, the purchase agreement created a security interest in the stock which was placed by the purchaser in escrow. The Court allowed the trustee's motion for turnover, finding that the escrow agreement did not perfect the creditor's security interest. The *Copeland* Court noted that *Dolly Madison* rested its decision on the fact that the security agreement postponed attachment of the creditor's security interest until after bankrupt-

cy. 531 F.2d at 1204. The Court further stated:

> Statements by the *Dolly Madison* Court indicating that the simultaneous existence of an escrow and a pledge is a legal impossibility were merely intended to underscore the parties' deliberate choice of the escrow device rather than a pledge in order to assure that attachment would be postponed. Since the District Court found that attachment had been delayed by specific agreement for the parties, it was not called upon to determine whether an attached security interest had been perfected. Hence, any statements suggesting that the placement of collateral in escrow precludes a creditor from perfecting his security interest for lack of sufficient possession under Sec. 9–305 are mere uncontrolling dicta.

531 F.2d at 1204.

In *In re O.P.M. Leasing, supra,* the other case cited in the Illinois Code Comment, the debtor and creditor entered into a lease arrangement which included an escrow agreement to provide the creditor with security for performance of a contractual obligation. After a default by the debtor on its contractual obligation, the escrow agent released the escrow deposit to the creditor. The trustee argued, among other things, that he could recover the escrow account pursuant to his Sec. 544(a) strong-arm powers because the creditor did not perfect its security interest in the escrowed monies. The Court rejected this argument, finding that delivery of possession to the escrow agent fully satisfied the perfection requirements of Sec. 9–305. 46 B.R. at 670. The Court based its decision on the grounds that the escrow agent was fully informed of the creditor's interest in the escrow account and that the escrow agreement provided adequate notice to subsequent creditors of the debtor that the debtor no longer had unfettered use of the escrowed funds. *Id.*

The case at bar is distinguishable from *Copeland* and *O.P.M. Leasing* in that the creditors in this case were not parties to the escrow agreement. In *Copeland* and *O.P.M. Leasing,* the secured party and the debtor agreed to an escrow arrangement that placed the property in the hands of the third party. In this case, the escrow arrangement was between the debtor and the purchaser of the debtor's Arizona real estate. The two creditor banks were not parties to the escrow agreement. Nevertheless, the Court does not find this factor to be determinative. Neither *Copeland* nor *O.P.M. Leasing* emphasized the fact that the secured creditor was a party to the escrow agreement. Instead, the courts focused on whether the escrow arrangement protected the reliance interests of third parties dealing with the debtor and whether it served the function of the possession exception in giving notice to the world that the secured party may have an interest in the collateral. These interests were served by the escrow arrangement in the case at bar. Possession of the note by the escrow agent, Stewart Title & Trust, served to adequately notify prospective creditors that the Debtor no longer had unfettered use of the funds in the escrow account. In addition, the escrow arrangement protected the reliance interests of third parties dealing with the Debtor. This is evidenced by the fact that the escrow agent informed the Charleston National Bank of the previous assignment of the note to the Eagle Bank when the Charleston National Bank notified the escrow agent of its own two assignments. If the Charleston National Bank had checked with the escrow agent earlier, it would have either been first in time, and thus have priority over the Eagle Bank, or it would have known of the assignment to the Eagle Bank, and it could have turned down the loans to the Debtor. Either way, the escrow arrangement protected the rights of third parties. Under these circumstances, the Court is convinced that the escrow arrangement in the instant case fully satisfied the perfection requirements of Sec. 9–305.

This conclusion is buttressed by the fact that a contrary holding would result in a creditor being unable to perfect a security interest in the note. Since the escrow agent has actual possession of the note,, a secured creditor may not take possession

of the note. The only way for the secured creditor to perfect its security interest in the note is through Sec. 9–305's provision for perfection by a bailee with notice. This provision also enables two secured creditors to have a perfected security interest in the same collateral through perfection by possession. Thus, both Eagle Bank and Charleston National Bank have perfected security interests in the note, but Eagle Bank has a prior perfected security interest in the note because it was first to notify the escrow agent of its assignment of the note.

For the foregoing reasons, the Court holds that the Eagle Bank of Charleston has a perfected security interest in the promissory note which is superior to that of the Charleston National Bank, now known as the Boatmen's National Bank of Charleston, and the Trustee as a judgment lien creditor. The Court further finds that the Boatmen's National Bank of Charleston also has a perfected security interest in the note which is superior to the Trustee's interest.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.