**In re IVY PROPERTIES, INC., Debtor.**

**UNSECURED CREDITORS' COMMITTEE, Plaintiff,**

v.

**SHAWMUT WORCESTER COUNTY BANK, N.A., et al., Defendants.**

**Bankruptcy No. 89–40229–JFQ. Adv. No. 89–4054.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 22, 1989.

---

David Nickless, Nickless & Phillips, Fitchburg, Mass., for Unsecured Creditors Committee/plaintiff.

Lucille Brennan, Fletcher, Tilton & Whipple, Worcester, Mass., for Steven Silverman/defendant.

James H. Barnhill, Bowditch & Dewey, Worcester, Mass., for Abraham W. Haddad & Lester Sadowsky/defendants.

John Burdick, Labovitz & Burdick, Worcester, Mass., for Heritage–NIS Bank for Sav./defendant.

Kevin McGee, Seder & Chandler, Worcester, Mass., for Shawmut Worcester County Bank/Assignee of Heritage–NIS Bank.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

Cross motions for summary judgment pit the Creditors' Committee (the "Committee") against a lender who has a perfected security interest in the Debtor's accounts but who has not recorded an assignment from the Debtor of real estate mortgages securing the accounts. The question presented is whether because of this lack of recording the Committee may avoid the lender's interest in the mortgages through the exercise of its rights as a hypothetical bona fide purchaser of the mortgages from the Debtor. I hold that the question is controlled by Massachusetts common law rather than the Massachusetts version of the Uniform Commercial Code, and that under such law recording of mortgage assignments is unnecessary.

The facts are undisputed. The Debtor was in the business of locating for investors income-producing real estate, managing the properties after their purchase by the investors, and ultimately acting as agent in their resale. The Debtor did business with investors through either one of two standard written contracts, an "Advantage One" contract under which the Debtor would advance the sums necessary to fund any negative cash flow from a property, and a "Real Estate Properties" contract under which the investor was responsible for such funding. Upon the earlier of termination of the contract or sale of the property, both forms of contracts obligated the investor to pay the Debtor a six percent sales commission on any sale plus twenty percent of the net increase in fair market value of the subject property. The Debtor took and recorded mortgages on the properties in order to secure the investors' obligations under the contracts.

To finance its operations, the Debtor borrowed from the assignor of Shawmut Worcester County Bank, N.A. (the "Bank"), granting to the lender a security interest in "accounts, accounts receivable, contract rights and general intangibles." Financing statements reflecting this security interest were filed in the appropriate offices. No assignment of the Debtor's mortgages from investors was ever signed or recorded.

Subsequent to the Chapter 11 filing, the Debtor has negotiated settlement of the obligations due from many of the investors, particularly their obligations to pay twenty percent of property appreciation from date of purchase to date of contract termination. Releases have been exchanged with these investors and the Debtor has granted them discharges of the mortgages. The Bank claims the settlement proceeds, and any future such proceeds, as post-petition pro-

ceeds of its pre-petition collateral, pursuant to 11 U.S.C. § 552(b). The Committee contends that the Bank's security interest in the proceeds is unperfected due to the failure of the Bank's predecessor to take and record mortgage assignments in the real estate records, and the Committee seeks to avoid the security interest through the exercise of its hypothetical rights of a bona fide purchaser of the mortgages from the Debtor under the "strong arm" clause of 11 U.S.C. § 544(a).

The Committee's arguments are reminiscent of a syllogism: The Bank's claim to the proceeds is entirely dependent upon the creation and perfection of its security interest in the mortgages; creation and perfection of its security interest in the mortgages, as opposed to the underlying investor obligations, is governed not by the Uniform Commercial Code but rather by other state law, including law pertaining to the recording of interests in real estate; therefore, the lack of recording of mortgage assignments with the real estate records renders the Bank's interest in the mortgages voidable by a bona fide purchaser from the Debtor. For the sake of simplicity of analysis, I will assume the validity the Committee's first, or major, premise. It should be observed, however, that the proceeds in dispute have been created in exchange for release of all of the Debtor's rights against these investors, both its contract rights and its mortgage rights securing them; there may be a distinction between such proceeds and, for example, real estate sales proceeds escrowed in consideration of a mortgage discharge pending an adjudication of the extent and validity of the debt or mortgage. I agree with the Committee's minor premise concerning the extent of the application of the Uniform Commercial Code. I disagree, however, with its conclusion.

## I. APPLICATION OF UNIFORM COMMERCIAL CODE TO BANK'S SECURITY INTEREST IN OBLIGATIONS SECURED BY REAL ESTATE MORTGAGES

Two sections of the Uniform Commercial Code must be read together. As enacted in Massachusetts, they provide:

The application of this Article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply. Mass.Ann.Laws. ch. 106, § 9–102(3) (Law. Co-op.1984).

This Article does not apply ... except to the extent that provision is made for fixtures in section 9–113, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder ... Mass.Ann.Laws ch. 106, § 9–104(j) (Law. Co-op.1984).

The official comments to § 9–102 provide in pertinent part:

The main purpose of this section is to bring all consensual security interests on personal property and fixtures under this Article, except for certain types of transactions excluded by § 9–104.

.     .     .     .     .

... [W]hen the mortgagee pledges the note to secure his own obligation ... this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or nonrecording of an assignment of the mortgagor's interest.

It seems clear from the entire text of § 9–102(3), particularly when considered in light of the official comments and the provisions of § 9–104(j), that the statute's reference to "secured obligation" is intended to reach only the obligation itself, leaving to other law questions concerning creation and perfection of security interests in an underlying real estate mortgage. Most courts have adopted this bifurcated approach. Thus an assignee of notes ("instruments" under the U.C.C.) and mortgage must take possession of the notes under U.C.C. § 9–304 in order to have a perfected security interest in them. *Peo-*

ples Bank of Polk County v. McDonald (In re Maryville Savings & Loan Corp.), 743 F.2d 413, 416–17 (6th Cir.1984) (security interest in mortgage notes held unperfected because of lack of possession required by U.C.C.); *First National Bank of Boston v. Larson (In re Kennedy Mortgage Co.)*, 17 B.R. 957, 965 (D.N.J.1982); (security interest in notes held perfected under U.C.C. through possession, with mortgage following debt under other applicable law); *Maloney v. Stewart Title & Trust of Tuscon (In re Nichols)*, 88 B.R. 871, 876 (Bankr.C.D.Ill.1988) (notice of assignment to escrow agent holding note and mortgage complies with U.C.C. requirement of possession of instruments for perfection).

The decisions are not, however, unanimous in their interpretation of these statutes. Some hold that creation and perfection under Article 9 governs a security interest in both the note and the mortgage. For example, in *Landmark Land Co. Inc., v. Sprague*, 529 F.Supp. 971, 977 (1981), the court viewed the statement in § 9–102(3) concerning application of Article 9 to a security interest in a "secured obligation" to apply Article 9 to the security interest itself as well as the obligation. Other courts have been influenced by a prior version of the comment to § 9–102 which stated that a pledge of the note "and the mortgage" makes Article 9 "applicable to the security interest thus created in both the note *and* the mortgage." (Emphasis added). *E.g., County Fed. Sav. & Loan Ass'n v. Maduff Mortgage Corp.*, 608 F.Supp. 588, 593 (D.Colo.1985). I am not confronted with this version of the official comment, which would in any event be subservient to the statute. I conclude that a separate standard must be applied to creation and perfection of the mortgage securing the obligation in which a security interest is taken.

■ Bifurcation of the debt and the underlying real estate interest is a bit more difficult in the context of a so-called "land contract" which involves just one instrument calling for installment payments of the purchase price and delivery of a deed

upon final payment. Some courts view the seller's interest in such contracts as an indivisible real estate interest in which a security interest can be perfected only through assignment recorded with the real estate records. *E.g., Swanson v. Union State Bank (In re Hoeppner)*, 49 B.R. 124, 128 (Bankr.E.D.Wis.1985). Others construe such contracts as creating a right to payment and require U.C.C. filing for perfection. *E.g., Frearson v. Wingold (Matter of Equitable Development Corp.)*, 617 F.2d 1152, 1157 (5th Cir.1980); *Northern Acres, Inc. v. Hillman State Bank*, 52 B.R. 641, 646 (Bankr.E.D.Mich.1985). *See also Borock v. NBD Dearborn Bank, N.A. (Matter of D.J. Maltese, Inc.)*, 42 B.R. 589, 592 (Bankr.E.D.Mich.1984) (contract for sale of condominium part of "general intangibles" perfected under Article 9). A landlord's right to rents, on the other hand, is clearly indivisible from the rest of his real property rights and therefore outside the coverage of Article 9. *In re Bristol Associates, Inc.*, 505 F.2d 1056, 1062 (3d Cir. 1974).

■ We are not here concerned with the assignment of an indivisible interest in real estate. An investor's obligation to the Debtor is an obligation related to real estate, but not an interest in the real estate itself. It is an "account," which under the 1972 amendments "means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it is earned by performance." Mass.Ann. Laws. ch. 106, § 9–106 (Law. Co-op.1984). The Bank therefore has a valid and perfected security interest in these obligations and their proceeds through its security agreement and filing of financing statements; other law controls its interest in the underlying mortgages.

## II. APPLICATION OF OTHER STATE LAW TO THE BANK'S SECURITY INTEREST IN THE UNDERLYING MORTGAGES

■ Recording of mortgage assignments does not appear to be necessary under the wording of the Massachusetts

statute governing recording of real estate interests. That statute provides in pertinent part:

A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, or an assignment of rents or profits from an estate or lease, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it ... is recorded in the registry of deeds for the county or district in which the land to which it relates lies. Mass.Ann. Laws, ch. 183, § 4 (Law. Co-op.1987).

Case law construes this statute to apply to unrecorded mortgages. *Tramontozzi v. D'Amicis*, 344 Mass. 514, 183 N.E.2d 295 (1962). But we have discovered no Massachusetts decision applying the statute to mortgage assignments, nor would its language seem to support such an application.

To the contrary, under Massachusetts common law the assignment of a debt carries with it the underlying mortgage, without necessity for the granting or recording of a separate mortgage assignment. In *Morris v. Bacon*, 123 Mass. 58 (1877), the holder of a note secured by a recorded mortgage endorsed and delivered the note to a bank as security for a loan. No assignment of the mortgage was signed or recorded. He later fraudulently made up and signed another note in the name of the same maker, and then purported to sell the forged note and the original mortgage to another by endorsing and delivering both instruments to him. The purchaser apparently paid value without notice of the prior assignment. The court required the purchaser to transfer the mortgage to the bank, holding that the sale of the mortgage without a valid assignment of the debt was a nullity, and stated:

No person could derive ... any title under that mortgage, except a title as collateral security ... [I]f the debt existed, and was not transferred to the mortgagee, the mortgage would be held only in trust for that ... debt. That the debt is the principal and the mortgage an incident, is a rule too familiar to require citation in support of it. *Id.* at 59.

This reasoning continues to have force. The *raison d'etre* of a security interest is the obligation which it is intended to secure. The security interest is meaningless unless held by the party also holding the obligation. Thus the security must necessarily be held for the benefit of the assignee of the debt. *See, e.g., Restatement of Security* § 29 (1941) (claim assignor deemed constructive trustee of pledged collateral whose existence assignee was unaware of at the time of assignment); 55 Am.Jur.2D *Mortgages* § 1270 (1971); *First Nat'l Bank of Boston v. Carson (In re Kennedy Mortgage Co.)*, 17 B.R. 957, 965 (D.N.J.1982) (mortgage viewed as collateral to debt whose security interest was properly perfected under U.C.C.).

A separate judgment has issued granting the Bank's motion and dismissing the complaint as against it.